OPINION
{¶ 1} This case is before the court on Plaintiff-Appellant GZK's direct appeal from a January 17, 2003 trial court decision granting summary judgment in favor of Defendants-Appellees Schumaker and FFF, and overruling GZK's motion for summary judgment.
 {¶ 2} In its decision the trial court succinctly stated the relevant facts as follows:
 {¶ 3} "Schumaker owns a parcel of real property located on Heincke Road in Miamisburg, Ohio (`Property'). Prior to Schumaker acquiring ownership of the Property, the previous owner had entered into a lease agreement with GZK (`Lease Agreement'), under which GZK constructed and operated an Arby's restaurant on the Property. The Lease Agreement, signed February 1, 1984, included among its terms a right of first refusal, specially stating in Paragraph 30 that `[GZK] shall have the right of first refusal to purchase the balancing remaining of Lot 2782 . . . owned by Lessor of which the leased premises herein is a portion thereof.' On July 22, 1998, Schumaker and GZK renewed the general terms of the Lease Agreement to extend it through January 31, 2009. There is no dispute between the parties as to the meaning or validity of the right of first refusal term as contained within the Lease Agreement.
 {¶ 4} "In November 2000, FFF, seeking to construct and operate a Kentucky Fried Chicken (`KFC') restaurant next to GZK's Arby's restaurant, offered to purchase the Property from Schumaker for $800,000. On November 15, 2000, Schumaker responded with a counteroffer and signed an option contract to sell the Property to FFF for $835,000 in cash by December 22, 2000 (`the Contract'). The Contract specified that the FFF's option to purchase the Property would `remain open for acceptance until November 22, 2000, at 4:59 p.m.' and further indicated that `[t]ime is of the essence of all provisions of this Contract.' The Contract was then delivered to FFF.
 {¶ 5} "The parties dispute whether FFF, through its president Terry Robinson (`Robinson'), signed the Contract before its expiration. ***
 {¶ 6} "On December 4, 2000, Schumaker, believing that FFF had timely and properly accepted the option, informed GZK of the Contract and extended to it the right of first refusal as required by the Lease Agreement. GZK, desiring to build a Lee's Famous Recipe Chicken restaurant on the Property, stated by a letter dated December 13, 2000, that it would exercise its right [of] first refusal. However, the parties did not close by the December 22, 2000 date set forth in the Contract. GZK contends that it had the ability to pay the purchase price in cash at the time, but that the parties agreed to delay the closing so Schumaker could consult her tax advisor and determine the most tax-favorable means of proceeding.
 {¶ 7} "On January 22, 2001, Schumaker and GZK signed an agreement (the `Agreement') which was intended to `confirm the terms of the purchase of the Property pursuant to the right of first refusal by this Agreement.' Under the Agreement, Schumaker Limited Partnership promised to `sell to GZK's designee (the `Buyer') and the Buyer shall purchase from the Seller the Property for the purchase price of $835,000.' Additionally, the Agreement provided that the $835,000 was to be paid on the closing date in accordance with the terms set out in Exhibit B. Exhibit B provided only that the parties would determine the manner in which the purchase price would be paid prior to the closing date, set by the Agreement at April 30, 2001. The Agreement was signed by Dorothy Schumaker on behalf of Schumaker Limited Partnership and Steven Stanforth on behalf of GZK.
 {¶ 8} "On February 15, 2001, FFF filed suit (referred herein as the `First Lawsuit') against Schumaker seeking specific performance under the Contract. GZK intervened, asserting that no contract to purchase the property existed between Schumaker and FFF because the option had expired prior to FFF signing the Contract.
 {¶ 9} "On April 20, 2001, Schumaker and GZK agreed to extend the closing date to September 30, 2001 because Schumaker was still unable to decide in what manner she wanted to receive payment for the Property. On September 30, 2001, Schumaker remained uncertain and the parties agreed to extend the closing date once again, this time to October 31, 2001. The closing date was later pushed back to January 31, 2002.
 {¶ 10} "On January 30, 2002, GZK offered to pay Schumaker cash and faxed a copy of the cashier's check it had obtained in the amount of $835,000 for verification that it was ready willing and able to tender that amount the next day. Schumaker flatly refused to accept the check due to her continued concerns about the potential tax consequence. She did not appear at the closing on January 31, 2002.
 {¶ 11} "On January 31, 2002, FFF and Schumaker voluntarily dismissed the First Lawsuit. This dismissal was the result of an alleged `deal' struck between FFF and Schumaker in which the parties agreed that Schumaker would lease a portion of the Property to FFF so it could construct and operate a KFC thereon. On May 24, 2002, Schumaker and FFF entered into a ground lease agreement (`Ground Lease') to allow FFF to construct the KFC on the Property.
 {¶ 12} "Based on such, GZK filed the present lawsuit seeking specific performance to purchase the Property pursuant to the Agreement as well as preliminary and permanent injunctions that would prohibit Schumaker and FFF from entering into a lease of the property and prohibit either party from making improvements to the property until GZK's contractual and equitable interests in the Property were determined by this Court. Subsequently, GZK filed an Amended Complaint joining FFF as a Defendant to the suit and asserting against it claims for damages for allegedly tortuously interfering with GZK's contract to purchase the land from Schumaker."
 {¶ 13} Finding that the Agreement between Schumaker and GZK was illusory and unenforceable, the trial court proceeded to grant Schumaker and FFF's motions for summary judgment and to overrule GZK's motion for summary judgment. Accordingly, the trial court dismissed all of GZK's claims against both Schumaker and FFF.
 {¶ 14} GZK's first assignment of error:
 {¶ 15} "The Trial Court Erred When It Held As A Matter Of Law, When Construing The Evidence Most Strongly In Favor Of Gzk That The Contract Between Gzk And Schumaker Was Illusory And Unenforceable."
 {¶ 16} GZK's second assignment of error:
 {¶ 17} "The Trial Court Erred When It Failed To Award Summary Judgment In Favor Of GZK As To GZK's Claim For Specific Performance Of Its Contract Confirming Its Proper Exercise Of Its Right Of First Refusal That Was Triggered By Schumaker's November 15, 2000, Offer To Sell The Property To FFF And/Or FFF's Timely Acceptance Of The FFF Contract."
 {¶ 18} In its first two assignments of error, GZK argues that the trial court erred in granting summary judgment for FFF and Schumaker and in denying GZK's motion for summary judgment. The primary basis of that claim is that in finding that the purchase contract between GZK and Schumaker was illusory, the trial court incorrectly looked only to the January 22, 2001 Agreement and failed to consider the other evidence offered in support of the existence of a contract, especially the December 13, 2000 letter from GZK to Schumaker. We agree with GZK.
 {¶ 19} Summary judgment pursuant to Civ.R. 56 should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which conclusion is adverse to the nonmoving party. Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. Moreover, when considering a motion for summary judgment, the evidence must be construed in favor of the nonmoving party. Id. Finally, it is well established that an appellate court reviews summary judgments de novo; we review such judgments independently and without deference to the trial court's determination. Koos v. Cent. Ohio Cellular, Inc. (1994),94 Ohio App.3d 579, 588, 641 N.E.2d 265.
 {¶ 20} Generally, courts must favor interpreting contracts in a manner that will render the contract valid and enforceable. State exrel. Gordon v. Taylor (1948), 149 Ohio St. 427, 79 N.E.2d 127. However, sometimes all of the terms of a contract are not made clear in the writing itself. This does not automatically negate the existence of an enforceable contract. "If an ambiguity exists in a contract, then it is proper for a court to consider `extrinsic evidence,' i.e., evidence outside the four corners of the contract, in determining the parties' intent. Blosser v. Carter (1990), 67 Ohio App.3d 215, 219, 586 N.E.2d 253. Such extrinsic evidence may include (1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave to their agreement. Id." U.S. Fid. Guar. Co. v. St. Elizabeth Med. Ctr.
(1998), 129 Ohio App.3d 45, 55-56, 716 N.E.2d 1201.
 {¶ 21} The January 22, 2001 Agreement herein named Schumaker as the seller, and it specified the property that was to be sold. The Agreement was incomplete, however, because it did not include specific payment terms. This fact alone is enough to warrant looking to extrinsic evidence. Moreover, the Agreement was inconsistent with the December 13, 2000 letter in that it identified the buyer as GZK's designee, rather than specifically naming GZK, as GZK had done in its December 13, 2000 letter. Rather than considering extrinsic evidence regarding those details, the trial court found that the contract between GZK and Schumaker was illusory and unenforceable.
 {¶ 22} There was no language in the Agreement that it was the exclusive document or complete agreement. Indeed, as indicated, the payment terms were not specified. The document in no way limited the terms of the Agreement to those that were specified in that written document. There was no reason not to look outside the four corners of the Agreement in order to clarify the incomplete and inconsistent terms contained therein.
 {¶ 23} When the December 13, 2000 letter, wherein GZK first indicated its intent to exercise its right of first refusal, is considered in conjunction with the Agreement, it is clear that from the start GZK was obligating itself to purchase the Property. After all, before FFF ever entered the picture, GZK had been seeking to purchase the Property from Schumaker in order to build a Lee's Famous Recipe restaurant. The depositions illustrate that at no time did GZK or Schumaker ever indicate the possibility of a third party purchasing the Property instead of GZK. Furthermore, all of the subsequent writings delaying the closing of the purchase of the Property also indicated GZK as the buyer. Therefore, the trial court's conclusion that GZK was not bound to purchase the Property from Schumaker was incorrect.
 {¶ 24} The trial court also noted that GZK and Schumaker never agreed upon specific payment terms. Schumaker was willing to accept $835,000 cash on December 22, 2000 from FFF for the purchase of the property, but she apparently began to have second thoughts about the tax consequences of accepting such a large amount of cash. Accordingly, for Schumaker's benefit the January 22, 2001 Agreement excluded payment terms. Schumaker and GZK repeatedly and mutually agreed to delays in closing on the purchase of the Property, again for Schumaker's convenience. There is no dispute that GZK was willing and able to pay cash for the Property both on December 22, 2000, and throughout the delays thereafter. It would be inequitable to punish GZK for its attempts to accommodate Schumaker in reaching a different payment agreement than she had originally accepted from FFF.
 {¶ 25} We conclude that there were no genuine issues of material fact and that when extrinsic evidence is considered in addition to the written Agreement, it is clear as a matter of law that GZK successfully exercised its right of first refusal and entered into an enforceable contract to purchase the Property from Schumaker. Accordingly, GZK's first two assignments of error are sustained. We will remand this matter to the trial court for further proceedings consistent with this opinion.
 {¶ 26} GZK's third assignment of error:
 {¶ 27} "The Trial Court Erred When It Failed To Award Summary Judgment In Favor Of GZK As To GZK's Claim For A Permanent Injunction To Enjoin FFF And Schumaker From Entering Into A Lease And Coming Onto The Property."
 {¶ 28} Because we have found that GZK and Schumaker did enter into an enforceable agreement to purchase the Property, GZK was entitled to a permanent injunction to prevent Schumaker and FFF from entering into a lease for the Property and from making any improvements upon the Property. We will therefore Remand this matter to the trial court for the issuance of a permanent injunction. This assignment of error is sustained.
 {¶ 29} GZK'S fourth assignment of error:
 {¶ 30} "The Trial Court Erred When It Dismissed GZK's Second Claim For Relief Against Schumaker For Damages For Its Breach Of Its Contract With GZK."
 {¶ 31} GZK'S fifth assignment of error:
 {¶ 32} "The Trial Court Erred When It Dismissed GZK's Claim Against FFF For Its Interference With GZK'S Contractual Relations With Schumaker."
 {¶ 33} GZK'S sixth assignment of error:
 {¶ 34} "The Trial Court Erred When It Dismissed GZK'S Claim Against Fff For FFF's Interference With GZK'S Long Term Business Relationship With Schumaker."
 {¶ 35} It would appear from the record below and the briefs of the parties that during the course of the discovery process the parties never fully developed these causes of action or possible defenses, choosing instead to focus on whether an enforceable contract was created when GZK exercised its right of first refusal. Therefore, we will Reverse the trial court's dismissal of these causes of action and Remand this case to the trial court for consideration of these claims. These assignments of error are sustained.
 {¶ 36} We REVERSE and REMAND this matter to the trial court for further proceedings consistent with this opinion.