[Cite as *Westerfield v. Three Rivers Nursing & Rehab. Ctr., L.L.C.*, 2013-Ohio-512.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

MICHELLE WESTERFIELD, EXECUTOR :

  Plaintiff-Appellee        :     C.A. CASE NO.   25347

v.                 :     T.C. NO.   11CV6557

THREE RIVERS NURSING      :      (Civil appeal from
& REHABILITATION CENTER, LLC        Common Pleas Court)
et al.              :

  Defendants-Appellants     :

                :

. . . . . . . . . .

## O P I N I O N

Rendered on the  15th  day of   February  , 2013.

. . . . . . . . . .

NANCY C. ILER, Atty. Reg. No. 0039855, 101 West Prospect Avenue, Suite 1650, Cleveland, Ohio 44115
  Attorney for Plaintiff-Appellee

WAYNE E. WAITE, Atty. Reg. No. 0008352 and KELLY M. SCHROEDER, Atty. Reg. No. 0080637, Fifth Third Center, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
  Attorneys for Defendants-Appellants

. . . . . . . . . .

FROELICH, J.

**{¶ 1}** Three Rivers Nursing and Rehabilitation Center and others appeal from a judgment of the Montgomery County Court of Common Pleas, which denied their motion to dismiss, to compel arbitration as to all defendants and, in the alternative, to stay proceedings against all defendants pending arbitration. Although for a different reason than that expressed by the trial court, the judgment will be affirmed.

I.

**{¶ 2}** The evidence at the hearing on Three Rivers' motion revealed the following facts:

**{¶ 3}** On March 18, 2010, John J. Desmond, Jr., was admitted to Three Rivers Nursing and Rehabilitation Center, following a four-day hospitalization at Christ Hospital in Cincinnati. Desmond decided to go to Three Rivers for rehabilitation so that he could be near his wife, who was a resident in Three Rivers' Alzheimer's unit.

**{¶ 4}** The following day, March 19, one of Three Rivers' employees, Ms. Wolford, asked Michelle Westerfield, Desmond's daughter, to come to the admission office and sign paperwork to formally admit Desmond. Westerfield was asked to sign 18 different documents, which addressed such things as Desmond's admission, the various optional amenities at the facility, treatment options, and legal notices. Westerfield testified that the documents were presented as "one package."[1]

**{¶ 5}** Westerfield was first presented with a five-page Licensed Nursing Admission Agreement ("Admission Agreement"). On page 4 in the "Resolution of

---

[1] At oral argument, Westerfield suggested that all of the admission documents, collectively, created a single agreement with Three Rivers. The trial court did not make a factual finding about whether the admission packet was one agreement or a series of agreements. Three Rivers treats the Licensed Nursing Admission Agreement and the Agreement to Resolve Disputes by Binding Arbitration as separate agreements, and for purposes of this appeal, we will do likewise.

Disputes" section, the agreement provided:

A. <u>Nonpayment of Charges</u>: Any controversy, dispute, disagreement or claim of any kind arising between the parties after the execution of this Agreement regarding nonpayment by Resident or Responsible Party for payments due to Facility shall be adjudicated in a court of law, or arbitrated if mutually agreed to by the parties.

B. <u>Resident's Rights</u>: Any controversy, dispute, disagreement or claim of any kind arising between the parties after the execution of this Agreement in which Resident or person on his/her behalf alleges a violation of any right granted Resident in a State or Federal statute shall be settled exclusively by binding arbitration.

The last paragraph of the agreement stated, in bold and capital letters, that the "UNDERSIGNED, HAVING READ THE FOREGOING TERMS OF THIS AGREEMENT, * * * AGREE TO THE TERMS HEREIN IN CONSIDERATION OF THE FACILITY'S ACCEPTANCE OF AND RENDERING OF SERVICES TO THE RESIDENT."

**{¶ 6}** Westerfield testified that Wolford "gave me a brief summary quickly on pretty much all of [the document]," but did not direct Westerfield's attention to the dispute resolution provision or any other provision in the Admission Agreement. Westerfield signed the Admission Agreement as the "Responsible Party" without reading it.

**{¶ 7}** Westerfield was next presented with the Liberty Nursing Center of Three Rivers, Inc. Agreement to Resolve Disputes by Binding Arbitration ("Arbitration Agreement"). The "Disputes to Be Arbitrated" provision reiterated the terms on the page 4

of the admission document, and the agreement set forth the terms of binding arbitration between the parties. Wolford briefly explained the document and asked Westerfield to sign it; Wolford did not mention anything about the previously-signed Admission Agreement which, at page four, contained a binding arbitration privision. Westerfield refused to sign the Arbitration Agreement and she took the document home with her.

{¶ 8} Westerfield then reviewed the rest of the documents. She declined some services for her father, such as telephone service, and accepted others. The entire admissions process lasted 20 minutes.

{¶ 9} Westerfield testified that her father lived independently and had never been declared incompetent or mentally incapable by any physician or court of law prior to his hospitalization and rehabilitation. Desmond, however, had not been asked to sign the admission paperwork. Westerfield acknowledged that her father had previously executed a Durable Power of Attorney document, which appointed Westerfield his attorney in fact.

{¶ 10} According to Westerfield's complaint, Desmond began experiencing severe diarrhea within a few days of his admission. On March 29, 2010, he was transferred to Christ Hospital, where he was diagnosed with hypovolemic shock and sepsis. Desmond died at the hospital on April 1, 2010.

{¶ 11} Westerfield, individually and as executor of Desmond's estate, subsequently brought suit against Three Rivers, numerous Three Rivers employees, and others (collectively, "Three Rivers") raising claims arising from Desmond's death. In February 2012, Three Rivers moved to dismiss, to compel arbitration and, alternatively, to stay pending arbitration, arguing that Westerfield had agreed to binding arbitration when she

signed the Admission Agreement. On March 8, 2012, Westerfield's attorney wrote to Three Rivers' attorney, indicating that she was disputing the application of the arbitration clause in the Admission Agreement and that she was terminating the Admission Agreement pursuant to the termination provision in that document.

{¶ 12} After a hearing on Three Rivers' motion, the trial court denied the motion. The court found that (1) Desmond's competency at the time of his admission was irrelevant because Westerfield was his attorney in fact, (2) Westerfield did not validly cancel the Admission Agreement through her March 2012 letter, (3) the arbitration provision in the Admission Agreement was unenforceable because there was no meeting of the minds on arbitration, and (4) the arbitration clause in the Admission Agreement was procedurally and substantively unconscionable.

{¶ 13} Three Rivers appeals from the trial court's ruling, claiming the trial court erred by refusing to enforce the parties' agreement to resolve any dispute through binding arbitration.

II.

{¶ 14} Three Rivers raises several issues to support its contention that Westerfield validly consented to resolve her claims by binding arbitration. First, it emphasizes that the Federal Arbitration Act preempts state laws that bar arbitration of particular disputes and that arbitration is favored in Ohio as a matter of public policy. Second, it argues that Westerfield agreed to arbitration when she signed the Admission Agreement and that her failure to read the terms of that document (or the failure of Three Rivers employee to explain the arbitration provision) does not relieve her from her acceptance of the provision. Three

Rivers states that the trial court should not have looked beyond the Admission Agreement to determine the intent of the parties. Third, Three Rivers argues that the arbitration provision was neither procedurally nor substantively unconscionable.

{¶ 15} In her responsive brief, Westerfield raises two "cross-assignments of error" challenging the trial court's findings that Westerfield had the authority to sign the Admission Agreement as Desmond's attorney in fact and that her attempted March 2012 termination of the Admission Agreement was not valid. Westerfield claims that the trial court erred in rejecting those bases for finding the arbitration agreement unenforceable. Because Westerfield is simply raising alternative reasons for affirming the trial court's judgment, she was not required to file a notice of cross-appeal and raise cross-assignments of error. Regardless, because we conclude, for different reasons, that the Arbitration Agreement is not enforceable, we need not address Westerfield's "cross-assignments of error."

{¶ 16} "Ohio has long had a strong public policy favoring arbitration." *Haight v. Cheap Escape Co.*, 2d Dist. Montgomery No. 25345, 2013-Ohio-182, ¶ 10, citing *Schaeffer v. All State Ins. Co.,* 63 Ohio St.3d 708, 711, 590 N.E.2d 1242, 1245 (1992). Arbitration is favored because it allows parties to bypass expensive and time-consuming litigation and "provides the parties thereto with a relatively expeditious and economical means of resolving a dispute." *Id.*, quoting *Schaeffer* at 712.

{¶ 17} Ohio's public policy favoring arbitration is codified at R.C. Chapter 2711. Under R.C. 2711.02(A), a written arbitration clause "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." This language tracks Section 2 of the Federal Arbitration Act, which provides:

"[A] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Taylor v. Ernst & Young, L.L.P*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 18.

{¶ 18} If a party moves to stay proceedings pending arbitration, pursuant to "an agreement in writing for arbitration," the court must first satisfy itself "that the issue involved in the action is referable to arbitration" under the parties' agreement. R.C. 2711.02(B); *Haight* at ¶ 12. "R.C. 2711.01, like its federal counterpart, 'acknowledges that an arbitration clause is, in effect, a contract within a contract, subject to revocation on its own merits.'" *Taylor Blg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 41, quoting *ABM Farms, Inc. v. Woods,* 81 Ohio St.3d 498, 501-502, 692 N.E.2d 574 (1998). Therefore, the enforceability of an arbitration clause is considered separately from the contract within which it is contained. *Id*.; *Brownell v. Van Wyk*, 2d Dist. Montgomery No. 24042, 2010-Ohio-6338, ¶ 24.

{¶ 19} The arbitrability of a claim is a question of law, which we review de novo. *Haight* at ¶ 12; *McManus v. Eicher,* 2d Dist. Greene No. 2003-CA-30, 2003-Ohio-6669; *see also St. Mary's v. Auglaize Cty. Bd. of Commrs.,* 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 38 ("Contract interpretation is a matter of law, and questions of law are subject to de novo review on appeal.").

{¶ 20} Whether the parties have executed a valid written arbitration agreement is a matter of state contract law. "A contract is generally defined as a promise, or a set of

promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Minster Farmers Coop. Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056, ¶ 28, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976); *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. The parties must have a "meeting of the minds" as to the essential terms of the contract in order to enforce the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991).

{¶ 21}   When reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos*., 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999). A contract that is, by its terms, clear and unambiguous requires no real interpretation or construction and will be given the effect called for by the plain language of the contract. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989).

{¶ 22}   A contract is ambiguous if its provisions are susceptible to two or more reasonable interpretations. *Johnson v. Johnson*, 2d Dist. Miami No. 2010 CA 2, 2011-Ohio-500, ¶ 11. "If an ambiguity exists in a contract, then it is proper for a court to consider 'extrinsic evidence,' i.e., evidence outside the four corners of the contract, in determining the parties' intent. *Blosser v. Carter*, 67 Ohio App.3d 215, 219, 586 N.E.2d 253 (1990). Such extrinsic evidence may include (1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to

accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave to their agreement. *Id.*" *U.S. Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 55-56, 716 N.E.2d 1201 (2d Dist.1998); *GZK, Inc. v. Schumaker Ltd. Partnership,* 2d Dist. Montgomery No. 19764, 2003-Ohio-5842, ¶ 20.

**{¶ 23}** Upon review of the evidence, we agree with Three Rivers that Westerfield originally agreed to arbitration when she signed the Admission Agreement. During her meeting with Three Rivers regarding the admission papers for her father, Westerfield was first presented with the Admission Agreement. Section VI of that agreement concerned the resolution of disputes. The two paragraphs comprising that section provided that issues of nonpayment would be resolved in court whereas certain claims by Desmond that arose between the parties after the execution of the Admission Agreement would be resolved by binding arbitration. Westerfield signed the agreement (albeit without reading it), which expressed her assent to binding arbitration.

**{¶ 24}** Westerfield testified that Wolford did not specifically discuss the arbitration provision of the Admission Agreement with her, a fact that the trial court noted in its decision. However, this fact has no bearing on the enforceability of the arbitration provision in the Admission Agreement. As we have stated in the context of a fraudulent inducement claim:

> [Plaintiff Swayze] was not misled because he could have read the contract. Swayze contends that he was never told about arbitration and that he was not given a copy of the agreement. The evidence from Huntington's employee indicates that Swayze did receive a copy of the arbitration agreement.

However, this dispute is not material. The fact is that Swayze signed a form indicating that he had read the terms and conditions of the agreement. He also agreed to be bound by the conditions, which included pre-dispute arbitration. An individual who fails to read what he signs cannot argue that he has been misled; willing ignorance is the very antithesis of being fooled by another.

*Swayze v. The Huntington Inv. Co.*, 2d Dist. Montgomery No. 20630, 2005-Ohio-2519, ¶ 24.

**{¶ 25}** We nevertheless agree with the trial court's conclusion that the arbitration provision in the Admission Agreement is not enforceable. Immediately after reviewing the Admission Agreement, Wolford reviewed the Arbitration Agreement with Westerfield. Westerfield testified that she refused to sign the document and asked to take it home with her; Ms. Wolford was "fine with it." The trial court found that, "***within seconds*** of signing the Admission Agreement, [Westerfield] made it quite clear to the Facility's representative, Ms. Wolford, that [she] had not agreed to arbitrate claims relating to her father's care, notwithstanding the Admission Agreement's clause. * * * [Westerfield] testified quite credibly that she understood and believed she had unequivocally rejected arbitration as the vehicle for resolving disputes regarding her father's care at the Facility." (Emphasis in original.)

**{¶ 26}** Based on the testimony, which the trial court credited, it is clear that, immediately after Westerfield's initial assent to arbitration in the Admission Agreement, Westerfield indicated that she would not agree to binding arbitration; at that time, Three Rivers agreed to accept Desmond as a resident without an agreement to arbitrate. We need

not decide whether this agreement is best construed as the result of estoppel by silence, an express modification of the original agreement, or as a termination of the original agreement and a new agreement without arbitration. (The Admission Agreement allowed Westerfield to terminate the Admission Agreement "at any time.") Regardless, Westerfield and Wolford both understood following their discussion of the Arbitration Agreement that Westerfield did not agree to binding arbitration, and the admission process continued with that understanding. Three Rivers cannot now enforce Westerfield's initial agreement to binding arbitration.

{¶ 27} In light of our determination, we need not address the scope of federal preemption of Ohio's arbitration statute, or whether the arbitration provision in the Admission Agreement is procedurally or substantively unconscionable.

{¶ 28} Parenthetically, we note that the parties' arguments before the trial court revolved around whether there was an enforceable agreement to arbitrate, not the reach of any such agreement. For example, the parties did not discuss whether the arbitration provision in the Admission Agreement applied to all of Westerfield's claims. The arbitration provision in the Admission Agreement required arbitration of claims "alleg[ing] a violation of any right granted Resident in a *State or Federal statute*." (Emphasis added.) Perhaps this is a reference to R.C. Chapter 3721 (concerning rest homes and nursing homes), but Westerfield alleged common law wrongful death and survivorship claims in addition to a Nursing Bill of Rights claim.

{¶ 29} In addition, the parties did not address below whether the arbitration agreement applied to all of the defendants in this case. The Admission Agreement states that

it is among only Three Rivers, Desmond, and Westerfield, whereas the Arbitration Agreement, which Westerfield expressly rejected, would have required binding arbitration for certain claims against "[Three Rivers], its owners, affiliates, employees or agents." Westerfield sued various entities and individuals in addition to Three Rivers.

{¶ 30}   Regardless, in light of our conclusion that there is no enforceable arbitration agreement, we need not address these issues or whether these questions would have resulted in ambiguity.

{¶ 31}   Three Rivers' assignment of error is overruled.

IV.

{¶ 32}   The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, P.J. and HALL, J., concur.

Copies mailed to:

Nancy C. Iler
Wayne E. Waite
Kelly M. Schroeder
Hon. Steven K. Dankof