[Cite as *Younce v. Heartland*, 2016-Ohio-2965.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| ESTATE OF RICHARD L. YOUNCE, et al. | : | |
| | : | |
| | : | C.A. CASE NO. 26794 |
| Plaintiffs-Appellees | : | |
| | : | T.C. NO. 15CV1383 |
| v. | : | |
| | : | (Civil appeal from |
| HEARTLAND OF CENTERVILLE, et al. | : | Common Pleas Court) |
| | : | |
| | : | |
| Defendants-Appellants | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___13th___ day of _____May_____, 2016.

. . . . . . . . . . .

GARY J. LEPPLA, Atty, Reg. No. 0017172 and MIRANDA R. LEPPLA, Atty. Reg. No. 0086351 and PHILIP J. LEPPLA, Atty. Reg. No. 0089075, 2100 S. Patterson Blvd., Dayton, Ohio 45409
      Attorneys for Plaintiffs-Appellees

DANNY M. NEWMAN, Atty. Reg. No. 0074740 and MICHAEL M. MAHON, Atty. Reg. No. 0087296, 525 Vine Street, Suite 1700, Cincinnati, Ohio 45202
      Attorneys for Defendants-Appellants

. . . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Heartland of Centerville, Heartland of Centerville OH, L.L.C., and HCR Manor Services, L.L.C.

(collectively "Heartland"). Heartland appeals from the July 13, 2015 decision of the trial court that overruled its motion to stay proceedings, pending arbitration, on the complaint of Josephine M. Goncy, as Executor of the Estate of Richard L. Younce, and on behalf of herself individually as the spouse of the deceased, Richard L. Younce. We hereby reverse and vacate the judgment of the trial court.

{¶ 2} Goncy filed a "Complaint for Medical Negligence, Wrongful Death and Other Relief with Affidavit of Merit" on March 13, 2015, against multiple parties ("other defendants") in addition to Heartland. Goncy asserted claims for loss of consortium and survivorship, as well as medical negligence and wrongful death. According to the complaint, Younce "was a 64-year-old male who was admitted to Heartland of Centerville on November 14, 2013" after suffering "a cerebral hemorrhage, with dense left hemiparesis, left sided spatial neglect, dysphasia, and a mobility disorder." Goncy alleged that while at the Heartland facility, Younce "developed multiple wounds," specifically to the skin. Goncy asserted that the facility failed "to provide adequate nutrition and hydration to Mr. Younce, which further complicated the development of his wounds and his immobility status." According to the complaint, laboratory evidence indicated that Younce "had multiple episodes of dehydration, the worst episode culminating on February 12, 2014, with a BUN of 67 and a creatinine of 2.3. These laboratory figures represent renal insult as upon admission to the nursing home, Mr. Younce's kidney function was normal."

{¶ 3} The complaint alleged that an examination of Younce in March 2014 revealed 13 separate pressure ulcers, and that the "ulcers are not mentioned again in the Heartland of Centerville records." The complaint alleged that Younce was admitted to

Kettering Hospital on March 16, 2014, "where large, significant decubitus ulcers and lower extremity contractures were documented." Goncy alleged that blood cultures and "a culture of the coccyx wound, obtained on March 18, 201[4], indicated the presence of Methicillin-resistant Staphylococcus aureas within the coccyx wound and within the blood." Goncy alleged that "inadequate documentation, lack of physical assessment, failure to provide adequate care and implement preventative measures fell below the appropriate standard of care and proximately resulted in extreme pain and suffering by Mr. Younce, and the death of Mr. Younce on March 24, 2014."

{¶ 4} On April 17, 2015, Heartland filed the motion to stay proceedings pending arbitration. Heartland argued that on "November 22, 2013, during the time of the decedent's admission to Heartland, both Plaintiff, as the decedent's wife and legal representative, and the decedent executed a binding Voluntary Arbitration Agreement * * *." ("VAA"). Heartland asserted that "Mrs. Goncy and the decedent knew (or should have been aware of) the effect of their execution of the Arbitration Agreement." Heartland asserted that pursuant to the VAA and R.C. 2711.02, the action must be stayed and all of Goncy's claims "must be submitted to binding arbitration as a matter of law." Heartland asserted that there is a strong presumption in favor of arbitration, and that "arbitration agreements between nursing homes and their residents are valid and enforceable contracts." Heartland asserted that "not only did the decedent, on his own accord, execute the Arbitration Agreement on November 22, 2013, but Mrs. Goncy herself, on that same day, also executed the [VAA]." Heartland asserted that the disputes covered by the VAA "include any and all claims arising from, or relating to, the decedent's admission to Heartland, the care and/or treatment he received at Heartland's

nursing home, or the Arbitration Agreement itself * * *." Heartland asserted that the disputes covered by the VAA "clearly encompass all of Plaintiff's claims herein."

{¶ 5} Heartland asserted that the VAA is not procedurally unconscionable, and that Younce "was in a sound bargaining position, as he was admitted to Heartland's nursing home on November 14, 2013, on his own free will and without the need for a legal guardian or representative. Further, there is no allegation of any pressure exerted or haste imposed on him to sign the [VAA]." Heartland asserted that in executing the VAA, Younce and Goncy "acknowledged that they had the right to review the [VAA] with an attorney or family member * * *; that they were explicitly provided thirty (30) days in which they could cancel the [VAA] * * *; and all parties 'stipulate[d] that there [were] other health care facilities in this community currently available to meet [the decedent's] needs.' " Heartland asserted that the VAA "was written in plain language as an entirely separate agreement from the Admission Agreement." Heartland asserted that execution of the VAA "was not a condition of admission."

{¶ 6} Finally, Heartland asserted that the VAA is not "substantively unconscionable." Heartland argued that the VAA notified Goncy and Younce that Younce would receive care at the facility whether or not the VAA was signed, that in executing the VAA they were giving up their right to a trial, that they had 30 days to cancel the VAA, and that they had the right to review the VAA with an attorney or family member. Heartland argued the VAA is valid even though parties named in the lawsuit are not parties to the VAA.

{¶ 7} A copy of the VAA is attached to Heartland's motion. It provides in relevant part as follows:

<u>VOLUNTARY ARBITRATION AGREEMENT ("AGREEMENT")</u>

THE PARTIES ARE WAIVING THEIR RIGHT TO A TRIAL BEFORE A JUDGE OR JURY OF ANY DISPUTE BETWEEN THEM. PLEASE READ CAREFULLY BEFORE SIGNING. THE PATIENT WILL RECEIVE SERVICES IN THIS CENTER WHETHER OR NOT THIS AGREEMENT IS SIGNED. ARBITRATION IS DESCRIBED IN THE VOLUNTARY ARBITRATION PROGRAM BROCHURE COPY, ATTACHED AND MADE PART OF THIS AGREEMENT.[1]

Made on <u>11/22/23</u> (date) by and between the Patient <u>Richard L.Younce</u> or Patient's Legal Representative _____ (collectively referred to as "Patient") and the Center _____[2].

**1. Agreement to Arbitrate "Disputes":** All claims arising out of or relating to this Agreement, the Admission Agreement or any and all past or future admissions of the Patient at this Center, or any sister Center operated by any subsidiary of HCR ManorCare, Inc. ("Sister Center"), including claims for malpractice, shall be submitted to arbitration. Nothing in the Agreement prevents the Patient from filing a complaint with the Center or appropriate governmental agency or from seeking review under any applicable law of any decision to involuntarily discharge or transfer the Patient.

---

[1] A copy of the Voluntary Arbitration Program Brochure is not part of the record before us.

[2] The date in the above section was handwritten, and the subsequent lines indicating the "Legal Representative" and the "Center" were left blank.

* * *

**8.   Right to Change Your Mind:**   This Agreement may be cancelled by written notice sent by certified mail to the Center's Administrator within 30 calendar days of the Patient's date of admission.   If alleged acts underlying the dispute occur before the cancellation date, this Agreement shall be binding with respect to those alleged acts.   If not cancelled, this Agreement shall be binding on the Patient for this and all of the Patient's subsequent admissions to the Center or any Sister Center without any need for further renewal.

**9.   Binding on Parties & Others:**   The Parties intend that this agreement shall benefit and bind the Center, its parent, affiliates, and subsidiary companies, and shall benefit and bind the Patient (as defined herein), his/her successors, spouses, children, next of kin, guardians, administrators, and legal representatives.

* * *

**14.   Health Care decision:**   The Parties hereby stipulate that the decision to have the Patient move into this Center and the decision to agree to this Agreement are each a health care decision.   The Parties stipulate that there are other health care facilities in this community currently available to meet the Patient's needs.

THE PARTIES CONFIRM THAT EACH OF THEM UNDERSTANDS THAT EACH HAS WAIVED THE RIGHT TO TRIAL BEFORE A JUDGE OR JURY AND THAT EACH CONSENTS TO ALL OF THE TERMS OF THIS

VOLUNTARY AGREEMENT. PATIENT ACKNOWLEDGES THE RIGHT TO REVIEW THIS AGREEMENT WITH AN ATTORNEY OR FAMILY BEFORE SIGNING.

{¶ 8} Directly underneath the above language is a signature block for the "Patient," and Younce's printed name and signature appear thereon. Additionally, there is a signature block for the "Patient's Legal Representative," where Goncy's printed name appears, as well as her signature above a line that provides: "Signature of Patient's Legal Representative in his/her Representative capacity." Beneath this signature line is a second signature line which provides: "Signature of Patient's Legal Representative in his/her Individual capacity," and this signature line is blank. A footnote provides: "Patient's Legal Representative should sign on both lines above containing the phrase 'Patient's Legal Representative.' " The signature blocks are dated "11-22-13." The VAA is also signed by a "Center Representative."

{¶ 9} On May 23, 2015, Goncy filed her affidavit as well as a response to Heartland's motion to stay. Goncy averred that the VAA "provided by Defendants was never reviewed with my husband and me, nor were any of the provisions explained to us by anyone from Heartland of Centerville." Goncy averred that on "November 22, 2013, I did not have a 'representative capacity' for my husband * * *," and that she "did not sign the [VAA] in an individual capacity." Goncy further averred that at "the time my husband signed the [VAA], he was lucid and fully capable of making decisions for himself, as verified by his medical records," and that prior to "and at the time of my husband's signing of the [VAA], I am not aware of any physician or other medical provider determining that my husband had lost the capacity to make informed health care decisions for himself."

Finally, Goncy averred that on December 10, 2013, Younce signed a Power of Attorney ("PoA"), thereby granting her "the authority to sign documents, such as an Arbitration Agreement, as my husband Richard Younce's legal representative." Goncy averred that the PoA was not in effect when the VAA was signed.

{¶ 10} In her response, Goncy asserted that "Ohio Courts, including the Supreme Court of Ohio, have held that a decedent cannot bind his or her beneficiaries to arbitrate their wrongful death claims." Goncy asserted that "judicial economy would not be served by allowing [Heartland] to arbitrate certain claims while others proceed in the Court." Goncy argued that "despite the presumption favoring arbitration, a party cannot be compelled to arbitrate a dispute * * * which they have not agreed to submit to arbitration." Goncy relied upon *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258, and asserted that its holding "was based on common law principles governing contracts and found that only signatories to an arbitration agreement are bound by its terms." Goncy asserted that "the holding in *Peters* requiring a real party in interest to sign an arbitration agreement for such an agreement to be enforceable is not in conflict with the Federal Arbitration Act ('FAA') as the FAA states that arbitration agreements are enforceable except 'upon such grounds as exist at law or in equity for the revocation for any contract.' "

{¶ 11} Goncy further relied upon *McFarren v. Emeritus at Canton*, 2013-Ohio-3900, 997 N.E.2d 1254 (5th Dist.), and *Tedeschi v. Atrium Ctrs., L.L.C.,* 8th Dist. Cuyahoga No. 97647, 2012 WL 2459147 (June 28, 2012) and asserted as follows:

> The facts in the abovementioned cases, especially the *McFarren* case, are nearly identical to the facts in the instant matter. Here, the Estate

of Richard Younce, by Executrix Josephine M. Goncy, brought medical malpractice, wrongful death, loss of consortium and survivorship actions against Defendants. * * * Pursuant to the Supreme Court of Ohio's holding in *Peters*, <u>only</u> the medical malpractice claim could be subject to [an] arbitration agreement pursuant to the subject document.   Josephine Goncy did not have the authority to sign the [VAA] as a legal representative for Richard Younce. * * * Ms. Goncy's [PoA] for Richard Younce was not effective at the time she signed the [VAA] as Richard Younce's "legal representative." * * * The [PoA] was not effective until it was signed on **December 10, 2013.** * * *

{¶ 12}  Goncy asserted that she "had no authority to bind the principal." She asserted that she did not sign the VAA in an individual capacity.   Goncy argued that "none of Richard Younce's surviving children signed the [VAA].   Likewise, as beneficiaries under R.C. 2125 et seq., they cannot be forced to arbitrate the wrongful death claim."

{¶ 13} Finally, Goncy asserted that if she is "forced to arbitrate this case, the typical economy and efficiency of arbitration would be lost."   This is so, she asserted, "because Plaintiffs would be forced to participate in two proceedings, instead of one, not to mention the possibility of two different findings on liability.   Rather than achieve cost savings, there would be a substantial increase in costs."   Goncy argued that judicial economy would be lost because none of the claims against the other defendants are subject to arbitration, and "all claims against these Defendants would proceed in this Court."

{¶ 14}  On June 1, 2015, Heartland filed a reply, initially noting that "Plaintiffs

neither dispute the validity of the [VAA], nor do they dispute that the survivorship claim is subject to arbitration. Rather, Plaintiffs argue simply that (1) the wrongful death claim[] is not abitrable, and (2) judicial economy would not be served because other parties and claims exist that are not subject to the [VAA]." Heartland asserted that "even where courts find that the wrongful death claim is not subject to arbitration, the case must nevertheless be stayed pending the arbitration of those claims that are subject to a valid arbitration provision." Heartland asserted that it "is well-settled Ohio law that when an action involves both arbitrable and non-arbitrable claims, the entire proceeding must be stayed until the issues and claims that are subject to arbitration are resolved." According to Heartland, Younce's "execution of the [VAA], therefore, requires that Plaintiffs' survivorship claim, which belongs to the decedent, be arbitrated." Finally, Heartland asserted that the "the fact that other party-defendants and non-abitrable claims exist is not a sufficient basis to deny Heartland's Motion to Stay."

{¶ 15} In denying Heartland's motion to stay the proceedings, the trial court noted as follows:

> * * * In reality, Heartland is seeking an order compelling binding arbitration between two of the parties to this litigation while others wait even though other defendants are named as agents or employees of Heartland and vicarious liability would require individual liability to be established. None of those defendants or the decedent's beneficiaries were parties to the VAA. Persons who are not parties to the VAA cannot be compelled to arbitrate. * * *
>
> Presumably, Heartland's assertion that "all claims" be arbitrated,

refers to all of plaintiff's claims against the other defendants. The plaintiff has not discussed the scope of the VAA and whether the subject claims arise out of the VAA itself even though "abitrability" is not a claim presented by plaintiff. * * * Neither Heartland nor plaintiff has provided the Court with the Admission Agreement. However, the VAA uses the words "including claims for malpractice." * * * The alleged medical negligence does not arise from or relate to the VAA, but may relate to duties or representations for care in the admission agreement. Nevertheless, the intent of the drafter is assumed to refer to malpractice as a claim by Richard against Heartland that would be subject to arbitration. There is no indication in the record as to the extent of knowledge that the signatories to the VAA had about what a claim for malpractice might entail. Instead, plaintiff focuses the Court's inquiry on the authority of those signing the VAA to waive the constitutional right to a jury trial.

{¶ 16} The court noted Goncy's argument that she was not appointed Younce's PoA until 18 days after the VAA was signed. It further noted as follows in determining that "the wrongful death claim is not required to be arbitrated":

* * * There is no claim that plaintiff had healthcare (sic) authority. As indicated, the VAA states that "the decision to agree to this Agreement is a health care decision." There is no indication that plaintiff had authority to make health care decisions for Richard. Thus, her signature on the VAA does not bind the estate or Richard's beneficiaries.

Heartland's motion seeks to stay this case involving the interests of

Josephine individually and their children, as well as the other defendants. * * * As indicated, neither plaintiff nor her children were signatories to the VAA. She had no authority to waive the constitutional right to trial by jury for the beneficiaries. The VAA is not binding on the beneficiaries. * * *

{¶ 17} The court next addressed "whether Richard's signing of the VAA is binding on his estate with regard to the survivorship claims." According to the trial court, "the issue is whether Heartland has shown that Richard waived the right of his estate to trial by judge or jury." The court found that, "since the VAA itself describes the decision to agree to arbitration and waive the constitutional right to a jury trial as a 'health care' decision, there would have to be 'informed consent' for such a decision." The court determined as follows:

> Plaintiff's affidavit says nothing about the circumstances when the VAA was signed except that it "was never reviewed with my husband and me, nor were any of the provisions explained to us by anyone from Heartland of Centerville." * * * Plaintiff images Richard's signature on the December 10, 2013 [PoA] in her memorandum * * * and the one on the VAA, 18 days earlier. Arguably, the signatures on the VAA look to be the writing of the same person. However, plaintiff does not argue that Richard did not sign the VAA.

> The only evidence before the Court is the affidavit of plaintiff, Josephine Goncy, that Heartland provided no information about the benefits and risks of waiving rights in favor of arbitration. There is no basis to find that Richard's signing was voluntarily and knowingly made after being

properly informed of the risks involved. A "knowing" waiver may be valid, but an "unknowing" waiver may not. There is no presumption in favor of waiver. Heartland must show that Richard's alleged waiver was informed and knowing. On the other hand, plaintiff asserts Richard was competent, but nothing was explained. * * *

Nevertheless, the Court finds that such a waiver of rights requires evidence that Richard was fully informed. There is no indication that he was knowledgeable about legal terminology or the differences between an arbitration and a trial to a jury of his peers or the benefits and risks of such a choice at this time when he was in need of rehabilitation therapy.

The court finds that Heartland has not shown that Richard knowingly and intelligently signed the VAA and finds that the VAA is invalid based on "grounds that exists at law or in equity for the revocation of any contract." See Federal Arbitration Act, 9 U.S.C. § 2, quoted in *Marmet Health Care Ctr., Inc. v. Brown*, [ ___U.S.___, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)].

There is no evidence before the Court to assess whether or not the VAA was unconscionable. * * * It is undisputed that Richard was admitted to Heartland after "a mild stroke and subsequent surgery." * * * There is no evidence of the actual stress or of cognitive difficulties on November 22, 2013. The Court accepts that Richard may have been under unusual stress, but in the absence of evidence, does not find that to be a determining factor. * * * The Court finds that the circumstances involved in the process of being admitted to a nursing home after a serious medical procedure or

hospitalization certainly require that the Court carefully scrutinize the evidence about whether the entity asserting a waiver of rights provided any meaningful information to the patient to assure the waiver was knowingly made. In this case, it is undisputed that no information was provided.

The Court cannot determine on the basis of Richard's signature alone, questionable on its face, that he knowingly waived the rights of his estate to a jury trial guaranteed by Article I, § 16 of the Ohio Constitution. Heartland has failed to show that Richard's alleged waiver was informed and knowing. Moreover, the Court finds that an arbitration of some of the plaintiff's claims and a trial of claims against the other defendants, as well as the interests of the beneficiaries, would undermine the purposes of using arbitration to reduce the costs of resolving a dispute. The Court also concludes that the scope of the VAA does not include claims between the patient and the center under such circumstances where they are interrelated with claims not subject to it.

{¶ 18} Heartland asserts one assignment of error herein as follows:

THE TRIAL COURT ERRED BY NOT STAYING PLAINTIFF'S WRONGFUL DEATH AND SURVIVORSHIP CLAIMS AGAINST HEARTLAND PENDING THE ARBITRATION OF PLAINTIFF'S SURVIVORSHIP CLAIM.

{¶ 19} Heartland asserts that in "light of the strong presumption favoring arbitration, all doubts should be resolved in favor of arbitrating the dispute," and "if parties contract to resolve their disputes in arbitration rather than in the courts, a party may not

renege on that contract absent the most extreme circumstances." Heartland asserts that "the trial court incorrectly shifted the burden to Heartland," requiring that Heartland establish that Younce's waiver was informed and knowing. Heartland asserts that this "is simply not the law in Ohio, and the trial court cites to no legal authority to support this contention." According to Heartland, "it was not Heartland's burden to show that the decedent knew the import of his execution of the [VAA]; the decedent, by his execution of the [VAA], is **presumed to have known** the import of his execution."

**{¶ 20}** Heartland notes that Goncy admitted in her affidavit that Younce signed the [VAA] and that he was lucid when he did so. Heartland asserts that whether or not Heartland personnel reviewed the VAA with Younce "is completely irrelevant." According to Heartland, "the provisions of the [VAA] informing the decedent of the effect of its execution could not be clearer or more apparent within the contract." Heartland asserts that "[o]rdinarily, one who is of full age in possession of his faculties and able to read and write, and who signs an instrument and remains acquiescent to its operative facts, may not thereafter escape its consequences by urging that he did not read or understand it, or that he relied upon representations of another as to its contents or significance."

**{¶ 21}** Heartland directs our attention to a recent decision by this Court in *Brown v. Extendicare, Inc.*, 2015-Ohio-3059, 39 N.E.3d 896 (2d Dist.) and asserts that therein, "it was the decedent's daughter, not the decedent, who executed the at-issue arbitration agreement, yet [this Court] nevertheless enforced the agreement in part due to the 'strong public policy favoring arbitration.' " Heartland argues that "[u]nlike *Brown* where only the decedent's daughter executed the arbitration agreement, in this case both the decedent

*and* Plaintiff executed the [VAA]. They are, therefore, charged with the knowledge of its contents. There is absolutely no evidence of fraud or that the decedent was forced to sign the [VAA]." Heartland asserts that the VAA "constitutes a written, valid and enforceable agreement between the parties," and that the disputes covered thereunder "clearly encompass all of Plaintiff's claims herein against Heartland."

{¶ 22} Regarding the trial court's assertion that it was required to "scrutinize" any evidence relating to whether Heartland provided meaningful information to Younce to assure he made a knowing waiver, Heartland again asserts, "[t]his is simply not the law in Ohio." Heartland argues that where an arbitration agreement is clear in terms of the effect of its execution, "a nursing home is not required to explain its provisions to the patient to ensure that the waiver of a jury trial was knowingly made."

{¶ 23} Heartland again asserts that the VAA is neither procedurally nor substantively unconscionable. Finally, Heartland asserts that the presence of non-arbitrable claims and parties who cannot be compelled to arbitrate is not a valid basis to deny a stay pending arbitration, and that all of Goncy's claims, including wrongful death, should be stayed pending the arbitration of the survivorship claim. According to Heartland, "the trial court erred in not staying both the survivorship claim and the wrongful death claim."

{¶ 24} Goncy responded that in filing the motion for stay, Heartland "attempted to defend against unconscionability rather than also confronting a primary problem with the [VAA], i.e. the attempt to bind decedent's beneficiaries to arbitration which they never accepted." Goncy again cites *Peters* and argue that a decedent cannot bind his beneficiaries to arbitrate their wrongful death claim. Goncy asserts that "the holding in

*Peters* was based on common law principles governing contracts and found that only signatories to an arbitration agreement are bound by its terms." Goncy asserts that "the *Peters* case is controlling in Ohio, holding that arbitration agreements are not enforceable against non-signing beneficiaries to a wrongful death claim."

{¶ 25} Goncy asserts that if "the conditions required for the [PoA] to come into being are not fulfilled, the representative has no authority to bind the principal." According to Goncy, since the PoA was signed after Younce granted Goncy his PoA, Goncy lacked authority to sign the VAA and her signature as Younce's legal representative on the VAA is "ineffective." Goncy again cites *McFarren* and *Tedeschi* in support of her arguments. According to Goncy, she did not sign the VAA in an "individual capacity." Goncy again asserts that Younce was lucid when he signed the VAA. Goncy notes that "none of Richard Younce's surviving children signed the [VAA]," and that "they cannot be forced to arbitrate the wrongful death claim."

{¶ 26} Goncy asserts that it "is inherent that a consumer contract for healthcare on a near emergency basis cannot include an adhesion contract for arbitration." Goncy argues that in "addition to the fact that [Heartland's] arbitration clause was part of an adhesion contract, evidenced by the obviously unequal bargaining power held by [Younce and Goncy], if the parties are forced to arbitrate this case the economy and efficiency of arbitration would also be lost," citing in part *Wascovich v. Personacare of Ohio,* 190 Ohio App.3d 619, 2010-Ohio-4563, 943 N.E.2d 1030 (11th Dist.). Goncy asserts that judicial economy would also be lost because none of the claims against the other defendants "would be subject to arbitration, as none of the other Defendants are parties to the [VAA]." Goncy argues that additional defendants have not been added to the matter herein in an

attempt to defeat the arbitration clause.

**{¶ 27}** In a footnote, Goncy asserts as follows:

Adhesive nursing home arbitration contracts are disfavored as a matter of public policy. See, e.g., Center for Justice and Democracy, "Stop Forced Arbitration in Nursing Homes", https://centerjd.org/content/letter-stop-forced-arbitration-nursing-homes, "Under forced arbitration programs, negligence and abuse cases must be resolved in private, secretive, corporate-designed dispute systems. Anti-patient bias infects this process. Nursing home arbitration companies have a financial incentive to side with repeat players who generate most of the cases they handle. Arbitrators are also not required to have any legal training and they need not follow the law. Court rules of evidence and procedures that protect plaintiffs do not apply. There is limited discovery, making it much more difficult for individuals to have access to important documents that may help their claim. Arbitration proceedings are secretive, often protected by confidentiality rules. There is no public record to inform industry practice or to notify the public or regulators. Decisions are enforceable with the full weight of the law even though they may be legally incorrect. This is especially disturbing because these decisions are binding. Sometimes, victims must split the sizeable costs of arbitration with the nursing home."

**{¶ 28}** In reply, Heartland argues that all of Goncy's claims, including wrongful death, should be stayed pending arbitration. Heartland argues that "the issue on appeal is *not* whether the wrongful death claim is *arbitrable*; the issue on appeal is whether the

wrongful death claim (and survivorship claim) must be *stayed* pending the arbitration of those claims that are arbitrable, which, in this case, is clearly Plaintiff's survivorship claim." Heartland asserts that "if unequal bargaining power were, by itself, enough to render an arbitration agreement unenforceable, as Plaintiff posits herein, no court would ever enforce such an agreement in the nursing home setting. However, this Court recently held that a nursing home arbitration agreement similar to [VAA] in this case was both valid and enforceable," citing *Brown v. Extendicare*.

**{¶ 29}** Heartland argues that "the presence of non-arbitrable claims and parties who cannot be compelled to arbitrate *does not* require a trial court to deny a stay pending arbitration, and concerns regarding judicial economy and inconsistent verdicts *should not override* the enforcement of an arbitration agreement." Heartland asserts that since Plaintiff's survivorship claim is subject to arbitration, "the *entire case* must be stayed until arbitration is resolved."

**{¶ 30}** Heartland again asserts that "it was not Heartland's burden to show that the decedent knew the import of his execution of the [VAA]; the decedent, by his execution of the [VAA], is * * * ***presumed to have known*** the import of his execution." According to Heartland, Younce's "execution of the [VAA] requires that the survivorship claim, which belongs to the decedent, be arbitrated."

**{¶ 31}** Heartland argues that although "Plaintiff all but conceded the validity of the [VAA] at the trial court level, Plaintiff now passingly states in her Brief that the [VAA] 'was part of an adhesion contract, evidence by the obviously unequal bargaining power held by [Plaintiff and the decedent].' " According to Heartland, "[n]otwithstanding the fact that Plaintiff provides no analysis for this new position, it must nevertheless fail for two (2)

reasons." First, Heartland asserts that *Wascovich* and *Manley v. Personacare,* 11th Dist. Lake No. 2005-L-174, 2007-Ohio-343*,* "are easily distinguishable from the facts of the instant case." Second, according to Heartland, "even if Plaintiff's argument regarding the unequal bargaining position were valid, such a basis is still not grounds to find that the [VAA] is unenforceable. Factors such as bargaining position go to the determination of whether an arbitration agreement is procedurally unconscionable." Heartland asserts that "as even the *Manley* court points out, an arbitration agreement can be procedurally unconscionable, yet still be enforceable as long as it is also not substantively unconscionable." According to Heartland, "regardless of whether Plaintiff's unequal-bargaining-position argument supports a finding of procedural unconscionability, the [VAA] is not substantively unconscionable as a matter of law."

{¶ 32} Regarding Goncy's concern for judicial economy, Heartland asserts that her reliance upon *Wascovich* is misplaced since "*Wascovich* was recently rejected by the Tenth District in [*Harrison v. Winchester Place Nursing & Rehab. Ctr.*, 2013-Ohio-3161, 996 N.E.2d 1001 (10th Dist.)]." Heartland argues that this Court "also rejected a similar argument that a stay pending arbitration is inappropriate where some of the defendants are not parties to the arbitration agreement and cannot be compelled to arbitrate," citing *Jones v. Unibilt Industries, Inc.*, 2d Dist. Montgomery No. 20578, 2004-Ohio-5983.

{¶ 33} In considering the above arguments, we initially note the distinction between survival and wrongful death claims as follows:

> * * * [W]hen an individual is killed by the wrongful act of another, the personal representative of the decedent's estate may bring a survival action *for the decedent's own injuries* leading to his or her death as well as a

wrongful-death action *for the injuries suffered by the beneficiaries of the decedent* as a result of the death. Although they are pursued by the same nominal party, we have long recognized the separate nature of these claims in Ohio.

*Peters v. Columbus Steel Castings Co.*, ¶ 11.

{¶ 34} As Heartland asserts and as this Court previously noted in *Brown v. Extendicare, Inc.*:

* * * " 'Ohio has a strong public policy favoring arbitration.' * * * Arbitration is favored because it allows parties to bypass expensive and time-consuming litigation and 'provides the parties thereto with a relatively expeditious and economical means of resolving a dispute.' * * * " *Westerfield v. Three Rivers Nursing & Rehab. Ctr.,* 2d Dist. Montgomery No. 25347, 2013-Ohio-512, ¶ 16. "Indeed, the Ohio courts recognize a 'presumption favoring arbitration' that arises 'when the claim in dispute falls within the scope of the arbitration provision.' * * *." *Taylor Bldg. Corp. of Am. v. Benfield,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 27.

"The Ohio Arbitration Act sets forth a trial court's role in construing and enforcing arbitration agreements." *Lindsey v. Sinclair Broadcast Group, Inc.*, 2d Dist. Montgomery No. 19903, 2003-Ohio-6898, ¶ 15.

*Brown v. Extendicare Inc.*, at ¶ 41-42.

{¶ 35} R.C. 2711.01(A) provides:

A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract, * * * or any

agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.

{¶ 36} R.C. 2711.02(B) provides:

If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

{¶ 37} As this Court further noted in *Brown v. Extendicare*:

* * * R.C. 2711.01 " 'acknowledges that an arbitration clause is, in effect, a contract within a contract, subject to revocation on its own merits.' " *Westerfied*, ¶ 18. "The arbitrability of a claim is question of law, which we review de novo. * * *." *Id.*, ¶ 19. "Whether the parties have executed a valid written arbitration agreement is a matter of state contract law." *Id.*, ¶ 20.

*Brown v. Extendicare*, at ¶ 44.

{¶ 38} As this Court further noted:

* * * "A contract is generally defined as a promise, or a set of

promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment) a manifestation of mutual assent and legality of object and of consideration." * * * The parties must have a "meeting of the minds" as to the essential terms of the contract in order to enforce the contract. * * *

When reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties.* * *

*Westerfield*, at ¶ 20–21.

**{¶ 39}** "The law does not require that each aspect of a contract be explained orally to a party prior to signing." *ABM Farms, Inc. v. Woods*, 81 Ohio St. 3d 498, 692 N.E.2d 574 (1998). As this Court has further noted:

> * * * The Ohio Supreme Court recognizes the "legal and common-
> sensical axiom that one must read what one signs." *ABM Farms v. Woods*,
> 81 Ohio St.3d 498, 503, 692 N.E.2d 574 (1998). "A person of ordinary mind
> cannot be heard to say that he was misled into signing a paper which was
> different from what he intended, when he could have known the truth by
> merely looking when he signed." *Ball v. Ohio State Home Servs., Inc.*, 168
> Ohio App.3d 622, 627–28, 2006-Ohio-4464, 861 N.E.2d 553, 557, ¶ 11 (9th
> Dist.), quoting *McAdams v. McAdams*, 80 Ohio St. 232, 240–241, 88 N.E.
> 542, 544 (1909).

*Mishler v. Hale*, 2014-Ohio-5805, 26 N.E.3d 1260, ¶ 36 (2d Dist.).

**{¶ 40}** As this Court further noted:

Absent indicia that the contract at issue is an adhesion contract, and that the arbitration clause itself appears to be adhesive in nature, an arbitration clause is to be upheld just as any other provision in a contract.[] An arbitration clause may similarly be enforceable notwithstanding a disparity in bargaining power or the fact that the contract had not been subject to negotiation.[]

*Garcia v. Wayne Homes*, *LLC*, 2d Dist. Clark No. 2001 CA 53, 2002-Ohio-1884, 2002 WL 628619 at *11, (footnotes with citations omitted). We note that an "adhesion contract" is a contract prepared by one party in a standard form, to be signed by the other party, who is typically a consumer in a weaker position, who adheres to the contract with minimal choice as to the terms thereof. *Wascovich*, at ¶ 41. As this Court further noted in *Garcia,* "[A] contracting party is presumed to know the reasonable import of the contents of a signed agreement, including the existence and scope of an arbitration clause.[]" *Garcia, id.* (footnote with citation omitted).

{¶ 41} In its motion to stay, Heartland argued in part that the VAA was not unconscionable as a matter of law. Goncy opposed Heartland's motion to stay based upon the fact that the PoA was signed after the VAA was executed, and on the basis of the impact of arbitration on judicial economy and efficiency. Regarding unconscionability, the trial court merely noted that there "is no evidence before the court to assess whether or not the VAA was unconscionable." We disagree.

{¶ 42} "Unconscionability is a ground for revocation of an arbitration agreement. * * * ." (citation omitted). *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 2009-Ohio-2054, 908 N.E.2d 408 ¶ 19. "The party asserting unconscionability of a contract bears the

burden of proving that the agreement is both procedurally and substantively unconscionable." *Id.*, ¶ 20. As the Ohio Supreme Court noted in *Hayes*:

> In determining whether an arbitration agreement is procedurally unconscionable, courts consider "the circumstances surrounding the contracting parties' bargaining, such as the parties' ' "age, education, intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question." ' "
>
> * * *
>
> An assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable. *John R. Davis Trust 8/12/05* v. *Beggs*, 10th Dist. No. 08AP–432, 2008-Ohio-6311, ¶ 13; *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.* (1996), 113 Ohio App.3d 75, 80, 680 N.E.2d 240. * * * No bright-line set of factors for determining substantive unconscionability has been adopted by this court. The factors to be considered vary with the content of the agreement at issue.

*Hayes*, at ¶ 23, 33.

{¶ 43} Regarding procedural unconscionability, in her affidavit, Goncy asserted that Younce, at the age of 64, was "lucid and fully capable of making decisions for himself," after suffering a *mild* stroke, when he signed the document, and there were no allegations that he or Goncy were coerced into signing it. In executing the VAA, they

both acknowledged that they had a right to review the document with a lawyer or family member, or to cancel the VAA by written notice sent by certified mail within 30 days of Younce's admission. Finally, in signing the VAA, Goncy and Younce stipulated that there were other health care facilities in their community currently available to meet Younce's needs. Finally, we note that, unlike the "forced arbitration programs" referred to in the footnote from Goncy's brief, quoted above, the VAA is clearly entitled, in bold print and all caps, "*Voluntary* Arbitration Agreement."

{¶ 44} Regarding substantive unconscionability, in *Hayes*, the Ohio Supreme Court held that "an arbitration agreement voluntarily executed by a nursing-home resident and not as a precondition to admission that eliminates the right to trial and to seek punitive damages and attorney fees is not substantively unconscionable." *Id.*, at ¶ 44. The VAA provided that Younce would receive services whether or not he executed the document. We agree with Heartland that the VAA is neither procedurally nor substantively unconscionable.

{¶ 45} Further, having thoroughly reviewed the record, we agree with Heartland that the trial court improperly shifted the burden to it to show that Younce's waiver was informed and knowing. We conclude that the presumption that Younce understood the import of signing the VAA is supported by Goncy's assertion in her affidavit regarding Younce's lucidity. While the trial court asserted that Younce's signature on the VAA is "questionable on its face," due to its alleged resemblance to Goncy's signature, Goncy averred that Younce himself signed the VAA. As noted above, Heartland was not required to advise Younce and Goncy regarding the import of executing the VAA, and they cannot now assert that they were misled into signing something distinct from what

they intended.

{¶ 46} Heartland asserts that the presence of non-arbitrable claims and parties who cannot be compelled to arbitrate is not a valid basis to deny a stay pending arbitration. We agree. In *Harrison v. Winchester Nursing*, 2013-Ohio-3163, 996 N.E.2d 1001 (10th Dist.), the appellant therein argued, "like in *Wascovich*, enforcement of the arbitration agreement will create two proceedings because some of the defendants are not subject to the arbitration agreement, and thus, their claims will have to go through the litigation process, rather than the arbitration process." *Harrison*, at ¶ 18. In *Wascovich*, "the court found the agreement to be substantively unconscionable in large part because of the negative impact that arbitration would have on judicial economy." *Harrison*, *id*. Specifically, the Eleventh District in *Wascovich* determined that the "normal factors favoring arbitration" did not apply therein, noting that "there is no economy or efficiency achieved." *Id.*, at ¶ 51. According to the Eleventh District:

> * * * In fact, the contrary is true, because a party may be forced to participate in two proceedings, instead of one. Rather than achieve a cost savings, there would be a substantial increase in costs. The potential exists for an increase in the number of depositions and hearings, duplicate discovery, and expert testimony and expense in two forums. The addition of these factors outweighs the factors that will weigh in favor of substantive conscionability.
>
> Most importantly, enforcement of the agreement in this case may result in inconsistent decisions on the issue of liability – something that should be avoided in every case.

*Id.*, at ¶ 51-52.

**{¶ 47}** We agree with the rationale set forth in *Harrison* as follows:

* * *Several courts have found that the presence of non-arbitrable claims and parties who cannot be compelled to arbitrate does not require a trial court to deny a stay pending arbitration.

In *Krafcik v. USA Energy Consultants, Inc.*, 107 Ohio App.3d 59, 667 N.E.2d 1027 (8th Dist.1995), the rationale of courts in other jurisdictions was adopted to conclude that an applicable arbitration agreement must be enforced, despite the presence of parties who are parties to the underlying dispute, but not subject to the arbitration agreement. The court found: "[I]t would be patently unfair to permit a plaintiff who has agreed to arbitration to escape that agreement by adding a defendant who is not a party to the arbitration contract." *Id.* at 64, 667 N.E.2d 1027. The court further stated, "failing to enforce the agreement simply because the plaintiffs have joined unrelated claims against a second defendant would fly in the face of Ohio's strong presumption in favor of arbitrability." *Id.*

In *DH–KL Corp. v. Stampp Corbin*, 10th Dist. No. 97APE02–206, [1997 WL 467319] (Aug. 12, 1997), our court referenced the Federal Arbitration Act, noting that it is "virtually identical to the Ohio statute" and stating that, under the Federal Arbitration Act, "a party cannot avoid an arbitration agreement simply by adding as a defendant a person not a party to the arbitration agreement." *Id.* We further stated that, pursuant to R.C. 2711.02, once it is determined that the issues raised were covered by a

written arbitration agreement, the statute mandates that the trial be stayed until arbitration of those issues has been conducted.

Additionally, in *Murray v. David Moore Builders, Inc.*, 177 Ohio App.3d 62, 2008-Ohio-2960, 893 N.E.2d 897 (9th Dist.), the court of appeals determined that if any of the claims are subject to an arbitration agreement, R.C. 2711.02 requires a stay of the trial proceedings, regardless of whether the dispute also involves parties who are not a party to the agreement and who cannot be compelled to arbitrate. *Id.* at ¶ 11. To the extent there were claims subject to a valid arbitration provision, it was determined the trial court erred by denying the stay due to the presence of non-arbitrable claims and parties who could not be compelled to arbitrate. *Id.*

Finally, in *Marquez v. Koch*, 4th Dist. No. 11CA3283, 2012-Ohio-5466, the court held: "the presence of non-arbitrable claims and parties not subject to an arbitration agreement does not justify the denial of Appellants' motion to stay." *Id.* at ¶ 11. *See also Cheney v. Sears, Roebuck and Co.*, 10th Dist. No. 04AP–1354, 2005-Ohio-3283, ¶ 12 (because some of the claims are clearly within the scope of contracts containing valid arbitration provisions, the entire case must be stayed until arbitration is resolved); *Pyle v. Wells Fargo Fin.*, 10th Dist. No. 05AP–644, 2005-Ohio-6478, ¶ 12 (a presumption favoring arbitration over litigation applies even when the case involves some arbitrable claims and some non-arbitrable claims, with the non-arbitrable claims being determined by a court after completion of

arbitration); and *Jones v. Unibilt Industries, Inc.*, 2d Dist. No. Civ.A. 20578, 2004-Ohio-5983, ¶ 19 (rejecting the argument that a stay pending arbitration is inappropriate where one of the defendants is not a party to the arbitration agreement).

*Harrison*, at ¶ 20-24.

**{¶ 48}** Having found that the VAA is not "invalid," as the trial court indicated, and having determined that the presence of other claims and parties is not a valid basis to deny a stay, we must next address which of Goncy's claims herein are subject to the VAA. In *Peters*, the decedent signed an arbitration agreement through his employment which stated that "it applied to the 'heirs, beneficiaries, successors, and assigns' of the employee." *Id.*, at ¶ 2. After his death, which occurred in the course of his employment, his widow and the administrator of his estate brought a survival action and a wrongful death action against Peters's employer. *Id.*, ¶ 3. "The trial court determined that while a survival claim for Peters's injuries could be resolved only pursuant to the plan, the wrongful-death claim could be brought in court." *Id.*, at ¶ 4. On the company's appeal, the issue was "whether an individual may bind his or her beneficiaries to arbitrate their wrongful-death claims by agreeing to arbitrate any claims that he or she may have against a particular defendant." *Id.*, at ¶ 6.

**{¶ 49}** The Ohio Supreme Court noted in part that "only signatories to an arbitration agreement are bound by its terms." *Id.*, ¶ 7. The *Peters* Court concluded that "[w]hen Peters signed the arbitration agreement, he agreed to arbitrate *his* claims against the company, whether brought during his life or after his death. Thus, the provision in the agreement binding Peters's heirs, beneficiaries, successors, and assigns applies to a

survival action, which is the vessel used to pursue his claims after his death." *Id.,* at ¶ 18. The court concluded, however, that "Peters could not restrict his beneficiaries to arbitration of their wrongful-death claims, because he held no right to those claims; they accrued independently to his beneficiaries for the injuries they personally suffered as a result of the death." *Id.*, at ¶ 19.

{¶ 50} We initially note Goncy's argument, based upon *McFarren* and *Tedeschi,* that if "the conditions required for the PoA to come into being are not fulfilled, then the representative has no authority to bind the principal." As noted by the Fourth District in *Primmer v. Healthcare Indus. Corp.*, 2015-Ohio-4104, 43 N.E.3d 788 (4th Dist.):

> * * * In *McFarren*, the court held that a nursing home resident's grandson, who had a power of attorney for health care for the resident, lacked authority to bind the resident to an arbitration agreement he signed on her behalf because there was no evidence that she was unable to make informed health care decisions at the time. In *Tedeschi* the court similarly held that the daughter of a nursing home resident who had a power of attorney for health care could not bind the resident by signing an arbitration agreement because there was no determination that the resident had lost the capacity to make informed healthcare decisions for herself.

*Id.,* ¶ 17.

{¶ 51} In both matters, lack of capacity to make healthcare decisions was a condition precedent to the effectiveness of the PoAs. For the reasons that follow, we conclude that Goncy's reliance upon the above authorities is misplaced, since the effective date of Goncy's PoA has no bearing on the outcome herein.

**{¶ 52}** Pursuant to *Peters,* we find that Goncy's survivorship claim on behalf of Younce is subject to arbitration based upon Younce's execution of the VAA, and that the provision in Paragraph 9 of the VAA regarding its binding nature on Younce's "successors, spouses, children, next of kin, guardians, administrators and legal representative," applies to the survivorship claim.

**{¶ 53}** We agree with Goncy, as reflected in the VAA, that although she signed the document, she did so in the capacity of Younce's "legal representative," and she did not do so in her individual capacity. Accordingly, we find that Goncy did not agree to arbitrate the wrongful death claims on behalf of herself and Younce's beneficiaries. In other words, as it pertains to Goncy's wrongful death claims, the VAA is not enforceable.

**{¶ 54}** Since Goncy's survivorship claim is subject to arbitration, we conclude that the trial court erred in denying Heartland's motion to stay all proceedings pending arbitration. Accordingly, Heartland's assigned error is sustained, and the judgment of the trial court is vacated to the extent the trial court denied the stay pending arbitration of the survivorship claim.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Gary J. Leppla
Miranda R. Leppla
Philip J. Leppla
Danny M. Newman
Michael M. Mahon
Hon. Richard Skelton