McFarland, J.
{¶ 1} Stephanie A. Alford, as the Personal Representative of the Estate of James H. Smith (deceased), appeals the final judgment of the Gallia County Court of Common Pleas, entered July 27, 2017. Ms. Alford ("Appellant"), filed a complaint against Arbors at Gallipolis ("Arbors") and named various other defendants, including Gallipolis Care, LLC and Extendicare Health Services Inc., alleging the named parties were neglectful and negligent, thereby directly and proximately causing James H. Smith's death. Appellees filed a motion asking the trial court to permanently stay the case pending arbitration. In the appealed-from entry, the trial court granted the motion.
{¶ 2} Appellant raised three assignments of error with regard to the court's July 27, 2017 entry. Based upon our de novo review in this matter, we find Appellant's arguments are without merit. As such, we overrule the assignments of error and affirm the decision of the trial court.
FACTUAL AND PROCEDURAL BACKGROUND
{¶ 3} The factual record before the trial court was extremely limited, and the following are the only facts upon which the parties agree. James H. Smith was admitted to Arbors in late March or early April 2015. His admission paperwork, including an arbitration agreement, was signed by his daughter Stephanie A. Alford. On March 29, 2016, Smith died at Arbors. The arbitration agreement was made part of the trial court's record.
{¶ 4} On March 27, 2017, Appellant filed a complaint in the Gallia County Court of Common Pleas against Appellees Arbors at Gallipolis, Gallipolis OPCO, LLC, Gallipolis Care, LLC, Extendicare Health Services, Inc., ARK OPCO Group, LLC, Prestige Healthcare, LLC, Fortis Management Group, LLC, Noble Healthcare Management, LLC, Craig Flashner, Yitzchok Perlestein, and John Does 1-10. The complaint *310 contained allegations that James H. Smith was a resident of Arbors at Gallipolis Nursing Home and that the defendants owned and/or operated Arbors when Mr. Smith choked on food and died on March 29, 2016.[1] The complaint also set forth that it was filed in order to pursue both the wrongful death claims and survivorship claims on behalf of Mr. Smith's next of kin. Contemporaneous to this filing, Appellant filed a motion for extension of time to file an affidavit of merit.
{¶ 5} On April 21, 2017, all named defendants filed an answer denying liability and setting forth various affirmative defenses. The defendants reserved the right to set forth additional affirmative defenses as they became known through the course of discovery, requested a dismissal of all claims and also requested that the matter be set for a jury trial. On April 27, 2017, a separate answer on behalf of defendants Extendicare Health Services, Inc., and Gallipolis Care, LLC ("Appellees") was filed. In this pleading Appellees asserted that Appellant's claims were subject to a binding and enforceable arbitration agreement. In this answer, Appellees also requested dismissal and a jury trial.[2]
{¶ 6} On May 22, 2017, Appellees filed a Motion to Stay Pending Arbitration and Alternative Motion to Dismiss with the arbitration agreement executed by Appellant attached to the motion to stay as "Exhibit A." On May 30, 2017, Arbors joined in the motion to stay. On June 12, 2017, Appellant filed a motion for extension of time to respond to both motions. Appellant requested 60 days. Appellant indicated the need to conduct discovery in the way of obtaining Mr. Smith's admission documents and deposing everyone involved in the admission process, with regard to execution of the arbitration agreement.
{¶ 7} On June 19, 2017, Appellees filed a reply in support of their motion to stay or dismiss and also opposed the motion for extension of time. Appellees asserted that discovery was unnecessary in that Appellant herself was the person who executed the arbitration agreement and thus would have all pertinent information. On June 26, 2017, Appellant filed a Motion for Additional Extension of Time to File Affidavit of Merit and a Motion to Compel. Appellant asserted she had not received a complete copy of all Mr. Smith's nursing home records. Appellees and Arbors also opposed this motion. On July 10, 2017, Appellant filed a reply.
{¶ 8} On July 27, 2017, the trial court filed the appealed-from journal entry which stated simply: "Upon review of pending cases, the Court finds this matter shall be stayed pending arbitration." This timely appeal followed.[3]
ASSIGNMENTS OF ERROR
"I. THE TRIAL COURT ERRED IN PERMANENTLY STAYING THIS CASE IN FAVOR OF BINDING ARBITRATION BECAUSE THE ARBITRATION AGREEMENT IS VOID, INVALID, AND ENFORCEABLE.
II. THE TRIAL COURT ERRED IN NOT PERMITTING APPELLANT TO CONDUCT DISCOVERY IN RELATION
*311 TO APPELLEES' MOTION TO STAY PENDING ARBITRATION.
III. THE TRIAL COURT ERRED IN RULING ON APPELLEES' MOTION TO STAY PENDING ARBITRATION WITHOUT GIVING APPELLANT AN OPPORTUNITY TO OPPOSE APPELLEES' MOTION."
STANDARD OF REVIEW
{¶ 9} We have held that in general "[a]n appellate court reviews a trial court's decision to grant or deny a motion to compel arbitration or stay the proceedings under the abuse of discretion standard." Primmer v. Healthcare Industries Corp., 2015-Ohio-4104, 43 N.E.3d 788, at ¶ 8 (4th Dist.), quoting Fields v. Herrnstein Chrysler, Inc., 4th Dist. Pike No 12CA827, 2013-Ohio-693, 2013 WL 772822, at ¶ 12, citing K.M.P., Inc. v. Ohio Historical Society, 4th Dist. Jackson No. 03CA2, 2003-Ohio-4443, 2003 WL 21995291, at ¶ 14. Nevertheless, " '[a] trial court's decision granting or denying a stay of proceedings pending arbitration is * * * subject to de novo review on appeal on issues of law, which will commonly predominate because such cases generally turn on issues of contractual interpretation * * *.' " Primmer, supra , quoting McFarren v. Emeritus at Canton, 2013-Ohio-3900, 997 N.E.2d 1254, ¶ 13 (5th Dist.), quoting Hudson v. John Hancock Fin. Servs., 10th Dist. Franklin No. 06AP-1284, 2007-Ohio-6997, 2007 WL 4532704, ¶ 8 ; see also Duncan v. Wheeler, 4th Dist. Scioto No. 09CA3296, 2010-Ohio-4836, 2010 WL 3852276, at ¶ 5.
{¶ 10} Appellant here raises several arguments asserting that the arbitration agreement is void, invalid, and unenforceable under Ohio law. Consequently, we are required to analyze the arbitration agreement, the pertinent statutes, and the applicable case law. As such, we review the trial court's decision using a de novo standard of review.
LEGAL ANALYSIS
{¶ 11} Both the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration." Primmer, supra, at ¶ 10, quoting Hayes v. Oakridge Home, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15, citing R.C. Chapter 2711. Arbitration is favored because it provides an expeditious and economical means of resolving a dispute and has the added benefit of lessening the burden on crowded court dockets. Primmer, supra; Hayes at ¶ 15. See also Estate of Younce v. Heartland of Centerville , 2016-Ohio-2965, 65 N.E.3d 192 (2nd Dist.), at ¶ 34 ; Westerfield v. Three Rivers Nursing & Rehab. Ctr., 2nd Dist. Montgomery No. 25347, 2013-Ohio-512, 2013 WL 596583, at ¶ 16.
{¶ 12} "The Ohio Arbitration Act sets forth a trial court's role in construing and enforcing arbitration agreements." Younce, supra , quoting Lindsey v. Sinclair Broadcast Group, Inc., 2nd Dist. Montgomery No. 19903, 2003-Ohio-6898, 2003 WL 22972357, at ¶ 15. R.C. 2711.01(A) provides:
"A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract, * * * or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." See also Younce, supra, at ¶ 35.
{¶ 13} R.C. 2711.02(B) provides:
*312 "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration."
ASSIGNMENT OF ERROR ONE
1. Is the agreement enforceable pursuant to R.C. 2711.22(A) ?
2. Was the agreement signed by all necessary parties?
{¶ 14} "In light of the strong presumption favoring arbitration, all doubts should be resolved in its favor." Primmer, supra, at ¶ 12, quoting Hayes at ¶ 15. This presumption applies equally to arbitration agreements between nursing home residents and nursing homes. Id. Under Appellant's first assignment of error, she first asserts that the arbitration agreement is not enforceable pursuant to R.C. 2711.22. She later asserts the agreement was not signed by all necessary parties. Because these arguments are related, we consider them jointly.
{¶ 15} R.C. 2711.22 provides in pertinent part:
"(A) * * * [A] written contract between a patient and a hospital or healthcare provider to settle by binding arbitration any dispute or controversy arising out of the diagnosis, treatment, or care of the patient rendered by a hospital or healthcare provider, that is entered into prior to the diagnosis, treatment, or care of the patient is valid, irrevocable, and enforceable once the contract is signed by all parties. The contract remains valid, irrevocable, and enforceable until or unless the patient or the patient's legal representative rescinds the contract by written notice within thirty days of the signing of the contract. * * *"
{¶ 16} Specifically, Appellant argues the arbitration agreement was not signed by the named parties, as required by R.C. 2711.22(A). She points out the first paragraph of the arbitration clause states it is entered into by:
"Extendicare Health Services, Inc., on behalf of is parents, affiliates and subsidiaries including Arbors at Gallipolis (hereinafter referred to as the 'Center'), a nursing facility, and James Smith, a Resident at the Center (hereinafter referred to as 'Resident')."
While there are multiple defendants' names as parties to the complaint, the only three individuals or entities mentioned in the arbitration agreement are James H. Smith, Extendicare Health Services, Inc., Arbors at Gallipolis, and Charlene Smith as "Center Representative." Appellant asserts: (1) her father did not sign the arbitration agreement; (2) she did not do so with legal authority; (3) Arbors at Gallipolis is not a legal entity; and, no one signed the arbitration agreement on behalf of Extendicare.[4]
{¶ 17} Appellees respond that Appellant's argument is contrary to law, given that business entities such as Arbors and *313 Extendicare are incapable of personal signatures and therefore, delegate such authority from principal to agent. Appellees point out Charlene Smith, Arbors' employee, acted as the agent. Appellees contend Charlene Smith signed the arbitration agreement as the "Center's Representative" on behalf of all entities and individuals related to Extendicare Health Services, Inc.
{¶ 18} "Whether the parties have executed a valid written arbitration agreement is a matter of state contract law." Younce, supra , at ¶ 37, quoting Brown v. Extendicare, 2015-Ohio-3059, 39 N.E.3d 896 (2nd Dist.), at ¶ 20.
"A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment) a manifestation of mutual assent and legality of object and of consideration." * * * The parties must have a "meeting of the minds" as to the essential terms of the contract in order to enforce the contract." Younce, supra, at ¶ 38, quoting Westerfield,supra, at ¶ 20-21.
{¶ 19} "Necessary parties * * * are those without whom no decree at all can be effectively made determining the principal issues in the cause." Karras v. Karras, 2017-Ohio-5829, 94 N.E.3d 1036 (2nd Dist.), at ¶ 24, quoting Oliver v. Natl. Collegiate Athletic Assn., 155 Ohio Misc.2d 1, 2008-Ohio-7144, 920 N.E.2d 190, ¶ 17 (C.P.), citing State ex rel. Crabbe v. Mun. S. & L. Co., 111 Ohio St. 178, 189, 144 N.E. 736 (1924).
{¶ 20} Our review of the arbitration agreement identifies the "Parties to the Agreement" clause Appellant has set forth above. However, that clause, in its entirety, continues: "It is the intent of the Parties that this Agreement shall inure to the benefit of, bind, and survive the Parties, their heirs, successors, and assigns." Furthermore, in the "Definitions" clause, it is stated that:
a. "Center as used in this Agreement shall refer to the nursing facility, its employees, agents, officers, directors, affiliates and any parent, affiliate and/or subsidiary of Center and its medical director acting in his/her capacity as medical director."
{¶ 21} A similar argument was made in Donnell v. Parkcliffe Alzheimer's Community, 6th Dist. Wood No. WD17001, 2017-Ohio-7982, 2017 WL 4329776. There, the appellant argued that an arbitration clause signed on behalf of "Parkcliffe Community," was not enforceable because Parkcliffe Community was not a legal entity or registered trade name. The appellate court looked to R.C. 1329.01(A)(2), which provides that "a name used in business or trade that is fictitious and that the user has not registered or is not entitled to register as a trade name" is a "fictitious name." The Donnell court noted at ¶ 12 :
"Corporations in Ohio have the right to adopt fictitious names 'so long as it is not done with fraudulent purpose or against public policy.' " Green Tree Servicing LLC v. Luce, 11th Dist. Ashtabula No. 2015-A-0022, 2016-Ohio-1011 [2016 WL 945170], ¶ 21, quoting McCaskey v. Sanford-Brown College, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543 [2012 WL 1142880], ¶ 15 ; see also Plain Dealer Publishing Co. v. Worrell, 178 Ohio App.3d 485, 2008-Ohio-4846, 898 N.E.2d 1009, ¶ 16 (9th Dist.), quoting Baldwin's Ohio Practice Business Organizations, Section 17:9 ('A corporation may use a name other than its corporate name in the conduct of its business.').
*314 '[A]n action may be commenced or maintained against the user of a fictitious name whether or not the name has been reported.' Plain Dealer Publishing at ¶ 16."
{¶ 22} In Donnell, the court reasoned that the appellant had not identified, and the court could not find, anything in the record supporting the conclusion that the fictitious name was adopted with fraudulent purpose or against public policy. Therefore, the court held that appellees' use of a fictitious name did not render the arbitration provision unenforceable as between the parties to the litigation. Id. at ¶ 12.
{¶ 23} Here, the record contains no evidence that the name Arbors of Gallipolis, as a business entity, was adopted with a fraudulent purpose or was otherwise adopted against public policy. And, the agreement was signed by Charlene Smith as "Center Representative."
{¶ 24} The arbitration agreement was entered into by Extendicare on behalf of its parents, affiliates, and subsidiaries. Pursuant to Footnote 5 above, the trial court record does not contain evidence as to the actual legal relationship of the defendants/appellees as "parents" or "subsidiaries." However, based on the conduct of the defendants/appellees in filing joint answers and adoption of pleadings, it is reasonable to conclude that they are in some manner "affiliates." Black's Law Dictionary (Abridged Sixth Edition), defines "Affiliate" as signifying a "condition of being united; being in close connection; allied, associated; or attached as a member or branch. Affiliate company. Company effectively controlled by another company. A branch, division, or subsidiary."
{¶ 25} It is also reasonable to conclude that the remaining defendants/appellees ratified Charlene Smith's actions in signing the arbitration agreement. For ratification to occur, the person performing the act, even though not an agent, must at that time purported to have acted as an agent for the party subsequently adopting the act as its own. Ashville Bank v. Higley , 4th Dist. Pickaway No. 85CA43, 1987 WL 5756 (Jan. 27, 1987), at *5. See 3 Am.Jur.2d (1986), Agency Sec. 171 and cases cited therein. Charlene Smith signed as "Center Representative," on behalf of Extendicare Health Services, Inc., and its affiliates, including Arbors. It is also reasonable to conclude that in filing joint answers and pleadings, and adoption of pleadings, the affiliates have ratified Smith's actions in signing the agreement as their representative as well. We find no merit to the argument that because the other defendants/appellees did not sign the agreement, it is unenforceable pursuant to R.C. 2711.22(A).
3. Did Appellant have authority to sign the agreement on behalf of her father James H. Smith?
{¶ 26} Appellant's second argument is that her father, now deceased, did not execute the agreement and it was not signed on his behalf by a person with authority. Because no discovery has taken place below, the record does not contain evidence as to Appellant's authority or lack thereof for her to make decisions on her father's behalf. Appellant also asserts she did not have apparent authority to execute the arbitration agreement. "In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to *315 believe and did believe that the agent possessed the necessary authority." Primmer, supra , at ¶ 23, quoting Master Consol. Corp. v. BancOhio Natl. Bank, 61 Ohio St.3d 570, 575 N.E.2d 817 (1991), syllabus.
{¶ 27} Appellees have directed our attention to the appellate decision in Vogt v. Indianspring of Oakley, 1st Dist. Hamilton No. C-110864, 2012-Ohio-4124, 2012 WL 3985953. In Vogt, the daughter of a long-term care facility patient brought claims against the facility as her mother's legal representative. The court of common pleas denied the facility's motion to stay proceedings and refer the matter to arbitration. The facility appealed and the court of appeals reversed, holding that the case was subject to arbitration absent a showing by the daughter that she lacked authority to sign the arbitration agreement as the patient's legal representative.
{¶ 28} Indianspring argued that the trial court erred when it failed to find the arbitration agreement was valid and enforceable. An arbitration agreement "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation." R.C. 2711.01(A). Id. at ¶ 5. Vogt's argument was that the arbitration agreement was not valid because she, not her mother, had signed the agreement. Vogt also emphasized certain certification language in the agreement which stated:
"If Resident is unable to sign this Agreement, then a legal representative of the resident may sign on his/her behalf. The person signing below certifies that he/she has the legal authority to enter into this Agreement on Resident's behalf with the Facility either through a valid Power of Attorney or a guardianship appointment."
{¶ 29} Because of this language, Vogt argued the burden was on Indianspring to demonstrate that [Vogt's mother] was unable to sign the agreement. The appellate court observed: "In signing the agreement (and initialing various clauses of the agreement) Vogt held herself out as the legal representative of [her mother]." The court stated that Vogt's contention ignored the presumption in favor of arbitrability. Id. at ¶ 7. The court concluded: "As the burden was on Vogt to show that the agreement was unenforceable, she had to demonstrate that she had not validly exercised her authority as [her mother's] legal representative. She did not make such a demonstration." Id.
{¶ 30} In this case, Appellant has acted exactly as Vogt did in initialing and signing the arbitration agreement. On the signature page, there are two lines requesting James H. Smith's name: first, the "Signature of Resident" and second, the printed "Name of Resident." Mr. Smith did not sign on the first line. His name is typed on the second line. Below, there are lines for the signature and printed names of the "Legal Representative for Healthcare Decisions" and the "Legal Representative for Financial Decisions." Appellant signed on both signature lines and printed names' lines. The printed name lines call for the legal representative, in addition to printing a name, to print the "Relationship or Title" held, such as guardian, conservator, power of attorney, or proxy. Appellant signed only her name on the lines and did not list a relationship or title.
{¶ 31} The certification language in the arbitration agreement herein states near the top of the signature page:
"If signed by a Legal Representative, the representative certifies that the Center may reasonably rely upon the validity and authority of the Representative's signature based upon actual, implied or apparent authority to execute this Agreement as granted by the Resident."
*316 {¶ 32} In Vogt, the certification language specified that the person signing had authority pursuant to a valid power of attorney or a guardianship appointment. However, there was no evidence in the record that Vogt provided that documentation. The same is true here. As in Vogt, we find Appellant failed in her burden of showing that she did not validly exercise authority as her father's legal representative when she signed the arbitration agreement and thus, has failed to show that the agreement is unenforceable.
{¶ 33} Finally, we point out that Appellant initialed and signed the arbitration agreement as her father's Legal Representative for Healthcare Decisions and as his Legal Representative for Financial Decisions. She purported to make both healthcare and financial decisions on behalf of her father. The Ohio Supreme Court has recognized that "The law does not require that each aspect of a contract be explained orally to a party prior to signing." Younce, supra, at ¶ 39, quoting ABM Farms, Inc., 81 Ohio St.3d 498, 692 N.E.2d 574 (1998). In Bender v. Logan , 4th Dist. Scioto No. 2016-Ohio-5317, 76 N.E.3d 336, at ¶ 56, we observed:
"[P]arties to contracts are presumed to have read and understood them and * * * a signatory is bound by a contract that he or she willingly signed." Preferred Capital, Inc. v. Power Eng. Group, Inc., 112 Ohio St.3d 429, 2007-Ohio-257, 860 N.E.2d 741, ¶ 10, citing Haller v. Borror Corp., 50 Ohio St.3d 10, 14, 552 N.E.2d 207 (1990)." See Younce, supra, at ¶ 39 :
{¶ 34} Here, Appellant is presumed to have read and understood the arbitration agreement. There is nothing in the record to indicate that Appellant unwillingly signed the agreement. For these reasons and based on the limited record before us, we find no merit to her argument herein.
4. Is the arbitration void under Ohio law?
{¶ 35} Appellant argues that the arbitration agreement in this case fails to meet the requirements of R.C. 2711.23. That statute provides in pertinent part:
"To be valid and enforceable pursuant to R.C. 2711.01 and 2711.22 of the Revised Code for controversies involving a medical claim, the agreement shall include and be subject to the following conditions:
"(A) The agreement shall provide that the care, diagnosis, or treatment will be provided whether or not the patient signs the agreement to arbitrate; * * *
(C) The agreement shall provide that the decision whether or not to sign the agreement is solely a matter for the patient's determination without any influence;
(D) The agreement shall, if appropriate, provide that its terms constitute a waiver of any right to a trial in court, or a waiver of any right to a trial by jury; * * *
(F) Any arbitration panel shall consist of three persons, no more than one of whom shall be a physician or the representative of a hospital;
(G) The arbitration agreement shall be separate from any other agreement, consent, or document * * *."
{¶ 36} We find no merit to Appellant's argument that the arbitration agreement is void pursuant to R.C. 2711.23. Subpart (A) above requires that care, diagnosis, and treatment shall be provided whether or not the patient signs the arbitration agreement. That requisite is satisfied by the boldface, underlined statement in all capital letters underneath the caption of the agreement on Page 1, as follows: "SIGNING THIS AGREEMENT IS NOT
*317 A CONDITION OF ADMISSION TO OR CONTINUED RESIDENCE IN THE CENTER." Furthermore, Page 5 of the arbitration agreement under "Resident's Understanding," explicitly states again that "this Agreement is not a condition of admission to or continued residence in the Center."
{¶ 37} Subpart (C) which states that "the decision whether or not to sign the agreement is solely for the patient's determination, without any influence," is also accounted for in the agreement. Paragraph 2 of the agreement is captioned "Voluntary Agreement to participate in ADR," and provides at Line 4 of the Paragraph: "The Parties voluntarily agree that any disputes covered by this Agreement * * * that may arise between the Parties shall be resolved exclusive by an ADR process * * *." Furthermore, on Page 5 of the agreement, Line 4, in bold print, the parties agree that "they have excused this Agreement voluntarily intending to be legally bound * * *."
{¶ 38} Subpart (D) requires that the agreement shall provide that its terms constitute a waiver of a right to jury trial. Again, Paragraph 13, "Resident's Understanding," provides in boldface and capital letters that "THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT BY ENTERING INTO THIS AGREEMENT THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED BY A COURT OF LAW." The agreement also provides at the top of Page 2: "The Parties' recourse to a court of law shall be limited to an action to enforce a binding arbitration decision * * *." This language is sufficient to comply with R.C. 2711.23(D).
{¶ 39} Appellant also argues that the agreement is not compliant with Subparts (F) and (G). We disagree, although Appellant's contention that Subpart (F), requiring that the arbitration panel consist of three persons and providing that no more than one individual on the panel may be a doctor or a representative of the hospital, is not part of the agreement is debatable. The agreement provides in pertinent part at "Paragraph 5. Administration":
"ADR under this Agreement shall be conducted by a Neutral and administered by an independent, impartial entity that is regularly engaged in providing mediation and arbitration services. * * * The request for ADR shall be made in writing and may be submitted to DJS Administrative Services Inc., ("DJS") * * *."
{¶ 40} However, the Administration clause further provides:
"If the parties choose not to select DJS * * * the parties shall select an alternative independent and impartial entity that is regularly engaged in providing mediation and arbitration services to serve as Administrator."
{¶ 41} Under this language, the Parties are not limited to requesting alternative dispute resolution (ADR) through DJS Administrative Services. The Parties may select an alternative entity. And, while it does not specifically state that the arbitration panel must be limited to one physician or hospital representative, the requirement is not precluded in any way by Paragraph 5.
{¶ 42} Further, the arbitration agreement contains a severability clause at Paragraph 10. A court will not lightly conclude that the invalidity of a particular contract term requires invalidation of the entire agreement. Taylor Bldg. Corp. of Am. v. Benfield, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 63. Cf. Ignazio v. Clear Channel Broadcasting, Inc., 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 17. We find that the language *318 of Paragraph 5 suffices to allow compliance with Subpart (F). However, even if it can be said to be insufficient, Paragraph 5 is severable and does not require invalidation of the entire arbitration agreement.
{¶ 43} Lastly, Subpart (G) requires that the arbitration agreement be separate from any other agreement, consent, or document. Upon review, the arbitration agreement appears to be a six-page, "stand alone" document.[5] The evidence does not suggest otherwise.
{¶ 44} Given our above analysis of the R.C. 2711.23 factors, we do not find the arbitration agreement in this case to be void and unenforceable on the basis of failure to comply with the R.C.2711.23 factors. Therefore, Appellant's argument in this regard is also without merit.
5. Must the wrongful death claims in this case be stayed as well?
{¶ 45} Appellant asserts that, pursuant to the Ohio Supreme Court's decision in Peters v. Columbus Steel Casting Co., 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258, the wrongful death claims cannot be stayed. We have recognized the Peters decision as holding that "[a] decedent cannot bind his or her beneficiaries to arbitrate their wrongful-death claims." Id. at paragraph two of the syllabus." Raber v. Emeritus at Marietta , 2016-Ohio-1531, 49 N.E.3d 345 (4th Dist.), at ¶ 15. And, Peters is still controlling.
{¶ 46} However, we continued: "[W]here any claim in an action is subject to arbitration under R.C. 2711.02(B), a court must stay the entire proceeding, although non-arbitrable claims exist." Raber, supra , at ¶ 24. Jarvis v. Lehr, 1st Dist. Hamilton No. C-130832, 2014-Ohio-3567, 2014 WL 4088093, at ¶ 11 ; Maclin v. Greens Nursing and Assisted Living, L.L.C., 8th Dist. Cuyahoga No. 101085, 2014-Ohio-2538, 2014 WL 2612666, at ¶ 9 ("when a trial court determines that certain claims are subject to arbitration, it must stay the entire proceeding until those claims have been arbitrated, even though the action may involve both arbitrable and non-arbitrable claims"); Villas Di Tuscany Condominium Assoc., Inc. v. Villas Di Tuscany, 7th Dist. Mahoning No. 12 MA 165, 2014-Ohio-776, 2014 WL 860156, ¶ 20 ("when an action contains both arbitrable and non-arbitrable claims, the court must stay the entire action until the arbitrable claims are resolved"). See also Donnell,supra , at ¶ 40.
{¶ 47} Further, as we held in Marquez v. Koch , 4th Dist. Ross No. 11CA3283, 2012-Ohio-5466, 2012 WL 5928196, at ¶ 11, "the presence of non-arbitrable claims and parties not subject to an arbitration agreement does not justify the denial of [a] motion to stay." Raber, supra , at ¶ 25. See also Harrison v. Winchester Place Nursing & Rehabilitation Center, 2013-Ohio-3163, 996 N.E.2d 1001, ¶ 24 (10th Dist.), citing Marquez at ¶ 11. Therefore, "[o]nce a court determines an issue in the proceeding is covered by a written arbitration agreement, even claims involving nonsignatories to the arbitration agreement will be stayed under R.C. 2711.02(B)." Jarvis at ¶ 11, citing Murray v. David Moore Builders, 177 Ohio App.3d 62, 2008-Ohio-2960, 893 N.E.2d 897, ¶ 11 (9th Dist.).
{¶ 48} Based upon the above well-established law, we find no merit to Appellant's argument. The wrongful death claims in this matter must be stayed. The presence of the wrongful death claims does not justify Appellant's assertion that the Motion *319 to Stay Pending Arbitration should have been denied.
6. Is the agreement procedurally and substantively unconscionable?
{¶ 49} Appellant has also argued the arbitration agreement is procedurally and substantively unconscionable. The Vogt court considered similar arguments. To successfully assert unconscionability as a ground for revoking an arbitration agreement, a party must demonstrate both substantive and procedural unconscionability. Vogt at ¶ 5 ; Taylor at ¶ 33, 884 N.E.2d 12. "An assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable." Vogt, supra ; Hayes at ¶ 33. "Procedural unconscionability considers the circumstances surrounding the contracting parties' bargaining[.]" Vogt at ¶ 5, quoting Taylor at ¶ 43. The appellate court stated at ¶ 6 :
"Due to the presumption in favor of arbitrability, Vogt had the burden to demonstrate unconscionability. Having reviewed the record, we conclude that she did not. During the hearing before the trial court, Vogt presented no evidence that the terms of the agreement were not commercially reasonable or that any circumstances in the bargaining made the process unconscionable. And our review of the agreement does not expose any indications of either substantive or procedural unconscionability."
{¶ 50} The same is true in Appellant's case. We acknowledge the trial court record is extremely limited. However, that has not been uncommon in our research. There is no evidence, which may be considered in the record before us, that the terms of the agreement were not commercially reasonable or that the circumstances surrounding the bargaining made the entire process unconscionable. Similarly as in the Vogt case, our review of the agreement does not expose any indications of substantive or procedural unconscionability. For the foregoing reasons, we find no merit to Appellant's assertion that the arbitration agreement here is unconscionable, either substantively or procedurally.
7. Have Appellees waived any rights to arbitration by actively litigating this case?
{¶ 51} Appellant argues that Appellees clearly knew of their alleged right to arbitration as the arbitration agreement was in their possession since the date of its execution in 2015. Appellant points out the Appellees filed answers in the case and did not file the motion to stay in response to the complaint. Appellant also points out the Appellees made jury demands in their answers. Furthermore, Arbors propounded written discovery requests and followed up on them in August 2017. Appellant concludes that moving ahead in two forums results in potential prejudice from piecemeal litigation. Given that Appellees demanded a jury trial and have engaged in discovery, Appellant urges a finding that they have waived any alleged right to arbitration.
{¶ 52} The appellant in Donnell, supra, made similar arguments. "Like any other contractual right, * * * the right to arbitrate may be implicitly waived." Donnell,supra, at ¶ 20, quoting Travelers Cas. & Sur. Co. v. Aeroquip-Vickers, Inc., 6th Dist. Lucas No. L-06-1201, 2007-Ohio-5305, 2007 WL 2874296, ¶ 34. "Whether the contractual right to arbitration has been waived is a mixed question of both factual issues and the weight to be given those facts under the applicable legal standard." Donnell, supra, quoting *320 Buyer v. Long , 6th Dist. Fulton No. F-05-012, 2006-Ohio-472, 2006 WL 259605, ¶ 7. "[A]lthough questions of law may be reviewed de novo, the trial court's ultimate determination of whether the right to demand arbitration has been waived will be reviewed under an abuse of discretion standard." Id.
{¶ 53} "Waiver may attach where there is active participation in a lawsuit demonstrating an acquiescence to proceeding in a judicial forum." Donnell,supra, at ¶ 21, quoting Long,supra, at ¶ 13. "A party asserting waiver must establish that (1) the waiving party knew of the existing right to arbitrate; and (2) the totality of the circumstances demonstrate the party acted inconsistently with the known right." Id. at ¶ 11, citing Atkinson v. Dick Masheter Leasing II, Inc., 10th Dist. Franklin No. 01AP-1016, 2002-Ohio-4299, 2002 WL 1934743, ¶ 20. "[A] waiver of the right to arbitrate is not to be lightly inferred." Donnell, supra , quoting Masheter Leasing,supra, at ¶ 13, citing Griffith v. Linton, 130 Ohio App.3d 746, 751, 721 N.E.2d 146 (10th Dist.1998).
{¶ 54} Donnell observed at ¶ 21, when considering the totality of the circumstances, the court may be guided by:
"[W]hether the party seeking arbitration invoked the jurisdiction of the court by filing a complaint, counterclaim, or third-party complaint without asking for a stay of the proceedings; (2) the delay, if any, by the party seeking arbitration to request a stay of the judicial proceedings, or an order compelling arbitration; (3) the extent to which the party seeking arbitration has participated in the litigation, including a determination of the status of discovery, dispositive motions, and the trial date; and (4) whether the nonmoving party would be prejudiced by the moving party's prior inconsistent actions. Masheter Leasing,supra, at ¶ 12."
{¶ 55} In Donnell, the appellant argued that appellees waived the right to arbitrate the dispute because they filed an answer with a jury demand, and participated in the litigation by propounding and responding to discovery requests, filing and responding to motions, and engaging in a status conference with the trial court. The trial court's decision, to which the appellate court agreed, concluded:
"On balance, the totality of the circumstances does not demonstrate that [appellees] actions were inconsistent with its right to arbitrate Mr. Donnell's claims against it. [Appellee] did not invoke the court's jurisdiction by filing any type of claim against Mr. Donnell, [Appellees'] four-month delay in filing its motion to stay was not unreasonable and was not done at a time that would disrupt a scheduled trial or avoid the consequences of a dispositive motion, its participation in the litigation to this point was not substantively different than its participation would have been if the case had gone directly to arbitration, and Mr. Donnell has not shown any prejudice due to [Appellees'] actions to this point." Id. at ¶ 24.
{¶ 56} We disagree with Appellant's argument that Appellees herein waived arbitration by participating in litigation. Analyzing the matter as set forth in Donnell, we find it reasonable that Appellees obviously knew about the right to arbitration. As to the totality of the circumstances regarding whether Appellees acted inconsistently, the record reflects as follows:
1) Appellant's complaint was filed March 27, 2017. Along with the complaint, Appellant filed a Motion for Extension of Time to File Affidavit of Merit.
2) Arbors' answer was filed April 21, 2017. It did not assert arbitration as an affirmative defense, did not assert *321 counter claims, contained a jury demand, and requested dismissal of the complaint.
3) Appellees' answer was filed April 27, 2017. It asserted that arbitration had been agreed upon as the first affirmative defense. The answer did not assert a counter claim, contained a jury demand, and requested dismissal.
4) On May 22, 2017, Appellees filed the Motion to Stay Pending Arbitration.
5) On June 1, 2017, Arbors adopted Appellees' Motion to Stay Pending Arbitration.
6) On June 12, Appellant filed a Motion for Extension of Time to file Response to Appellees' Motion to Stay Pending Arbitration.
7) On June 26, Appellant filed a Motion for Additional Extension of Time to File Affidavit of Merit.
8) On July 27, 2017, the trial court filed the Journal Entry finding the matter to be stayed pending arbitration.
{¶ 57} Prior to July 27, 2017, the trial court record indicates the parties had never met for a status conference or established a trial date. Essentially, two months passed between the filing of the complaint and the filing of the Motion to Stay Pending Arbitration. Four months passed between the commencement of the action and the trial court's entry granting the stay.
{¶ 58} Under the totality of the circumstances, Appellant has not demonstrated that Appellees' actions are inconsistent with the right to arbitrate. It appears that Appellees' have had minimal participation in the case and have protected their rights to a jury trial. At this juncture, Appellant has not shown any prejudice attributable to Appellees. We find no merit to Appellant's argument that Appellees have waived any right to arbitration by actively litigating this matter.
{¶ 59} As set forth above, we find no merit to any of the arguments set forth under Appellant's first assignment of error. We find the arbitration agreement in this matter is valid and enforceable. Therefore, the trial court correctly granted Appellees' motion to stay the matter pending arbitration. Accordingly, the first assignment of error is overruled.
ASSIGNMENT OF ERROR TWO
{¶ 60} Here, Appellant argues the trial court abused its discretion and erred in not permitting Appellant to conduct discovery in relation to Appellees' Motion to Stay Pending Arbitration. She asserts she was entitled to conduct discovery regarding the validity of the arbitration clause. Specifically, she requested time to depose Charlene Smith regarding her recollection of the execution of the arbitration agreement. Appellant also asserted she needed to obtain the entire admissions file.
{¶ 61} Appellant directs our attention to Strader v. Magic Motors of Ohio, Inc., 5th Dist. Stark No. 2006CA376, 2007-Ohio-5358, 2007 WL 2893422. In 2004, Strader purchased a 1994 Nissan Maxima with an extended warranty from Magic Motors of Ohio. He signed a Dispute Resolution Agreement at the time of purchase. Strader later joined the military and the vehicle was repossessed in 2005. In 2006 Strader and his wife filed a complaint in Canton Municipal Court alleging Magic Motors had violated federal and state law. In July 2006, Magic Motors filed a Motion to Stay Proceedings and Refer Arbitration.
{¶ 62} Ten days later, the matter was eventually transferred to common pleas court. On October 23, 2006, Strader filed a Motion for Extension of Time to Respond to the Motion to Stay, specifically requesting 90 days for additional discovery regarding *322 the enforceability of the arbitration agreement. On November 17, 2006, the common pleas court granted the Motion to Stay.
{¶ 63} On appeal, Strader argued the trial court erred for failing to allow them additional time to conduct discovery on enforceability of the arbitration agreement. The Strader decision noted at ¶ 30 :
"Ohio appellate courts have found that the trial court abuses its discretion in granting a motion to stay the proceedings pending arbitration without affording a party a reasonable opportunity to discover and present evidence as to the enforceability of the arbitration clause. Hampton v. Swad, Franklin County App. No. 03AP-294, 2003-Ohio-6655, 2003 WL 22927367 ; Harrison v. Toyota Motor Sales, U.S.A., Inc., Summit County App. No. 20815, 2002-Ohio-1642, 2002 WL 533478. * * * In this case, the trial court relied solely upon the terms of the agreement in determining the issue of unconscionability. While appellants may or may not ultimately be successful on the issue of unconscionability, the better course is to permit discovery on all the relevant factors and afford the parties the opportunity to present their finds on this issue." Strader, supra , at ¶ 30.
{¶ 64} We find Strader to be distinguishable. There, Magic Motors submitted the affidavit of Dean Petersen, its controller, who testified as to the terms of the arbitration agreement, in support of its Motion to Stay. While the appellate court indicated the trial court relied solely upon the terms of the agreement, the trial court also had before it Petersen's affidavit. It would seem inherently unfair that Strader did not have time to conduct discovery and attach, as did Magic Motors, additional evidence as to the enforceability of the arbitration agreement.
{¶ 65} Appellant has also directed our attention to the Harrison case, cited above. Harrison bought a vehicle from Ganley which was alleged to be defective. Harrison filed suit against Ganley and Toyota Motor Sales, making breach of contract, lemon law, and unfair sales practices' claims. Ganley eventually moved to stay the proceedings pending arbitration and attached a copy of the contract, which contained the arbitration clause, to its motion. In response, Appellant alleged that the arbitration clause was unenforceable and moved the trial court to postpone its ruling on Ganley's motion until Appellant could conduct discovery. However, the trial court granted Ganley's motion and determined that the arbitration clause was enforceable.
{¶ 66} In its decision, the Harrison court observed at *2 :
"Some procedures, though ostensibly providing for arbitration, are by their very nature unenforceable. See Jones v. Fred Martin Motors, Co. (Feb. 13, 2002), Summit App. No. 20631, unreported, at 4. Therefore, the trial court is not warranted in sending the case into such unchartered waters. Consequently, we find that the trial court abused its discretion in granting [a co-defendant's] motion to stay the proceedings pending arbitration without affording Appellant an opportunity to conduct discovery as to the enforceability of the arbitration clause and, further, to present his findings on this issue. See Sikes v. Ganley Pontiac Honda (Sept. 13, 2001), Cuyahoga App. No. 79015 [2001 WL 1075726]."
{¶ 67} This case is also distinguishable. The Harrison court observed at *2 :
"Upon a review of the record, the arbitration clause appears to be pre-printed on the contract and does not contain specific details concerning the arbitration *323 process. Specifically, the clause provides: 'See General Manager for information regarding arbitration process.' "
{¶ 68} We agree with the Harrison court that "See General Manager for information regarding the arbitration process" is deliberately obtuse and fairly considered "unchartered waters." However, in Appellant's case, the arbitration agreement is a six-page document. The agreement has 13 numbered clauses and sets forth explicit terms and conditions of entering into the agreement. Given the vague nature of the arbitration contract in Harrison, we agree with the appellate court's decision but that is not the case here.
{¶ 69} Here, Appellant had two months to file any response to the Motion to Stay and managed only to file a Motion for Extension of Time to file Merit Brief. Unlike Strader , the trial court had no additional discovery from either side in making its decision on the motion to stay. Nor, as in Harrison, did the trial court's decision rest upon review of a vague and incomplete document. Here the trial court had the 4-corners of the arbitration agreement, which was explicitly drafted into 13 clauses, replete with statutorily required elements, and set forth at times in boldface and/or underlined capital letters.
{¶ 70} A decision to grant or deny a discovery motion rests within the sound discretion of the trial court. Stephens v. Marietta Memorial Hospital, 4th Dist. Washington No. 95CA46, 1996 WL 551405 (Sept. 23, 1996), at *6. Mauzy v. Kelly Services, Inc., 75 Ohio St.3d 578, 664 N.E.2d 1272 (1996). The trial court has discretion to manage the discovery process. State ex rel. Daggett v. Gessaman , 34 Ohio St.2d 55, 295 N.E.2d 659 (1973). We find nothing in this record to suggest that the trial court abused its discretion in denying Appellant's Motion for Extension of Time to Respond to Defendants' Motion to Stay. As such, her argument is without merit and the second assignment of error is also overruled.
ASSIGNMENT OF ERROR THREE
{¶ 71} Appellant also asserts the trial court erred in ruling on Appellees' Motion to Stay Pending Arbitration without giving Appellant an opportunity to oppose the Motion to Stay. Appellant points out she was never able to file a brief in opposition to the motion to stay. Rather, she filed the Motion for Extension of Time in order to conduct additional discovery before responding. Appellant asserts that the trial court never ruled on Appellant's Motion, nor did she give Appellant notice she would be ruling on the Motion to Stay.
{¶ 72} It has generally been held that "a trial court's failure to rule gives rise to a presumption that the trial court has denied the motion." GMAC Mtge., LLC v. Jacobs, 196 Ohio App.3d 167, 2011-Ohio-1780, 962 N.E.2d 838, ¶ 9 (9th Dist.). Appellant also argues even if the trial court was not inclined to give Appellant additional time to conduct discovery, it should have given her formal notice through the grant of a limited continuance, that the court was about to render judgment in the case. If given notice, Appellant could have challenged the arbitration clause even without additional discovery. Appellant concludes the trial court abused its discretion.
{¶ 73} We have found no authority that requires the trial court to notify Appellant it was about to rule on the Motion to Stay. The Motion to Stay had been pending two months. Appellant made no attempt to file a response directed at the merits of the Motion to Stay. We do not find the trial court abused its discretion in failing to notify Appellant. Therefore, the third assignment of error is also overruled.
*324 {¶ 74} Accordingly, having overruled all of Appellant's assignments of error, we affirm the decision of the trial court.
JUDGMENT AFFIRMED.
Hoover, P.J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment Only.

It is also alleged that Defendants John Does 1-10 were working under contract or otherwise for the named defendants.

On May 9, 2017, Attorneys Romanello and Poling withdrew as counsel for Extendicare and Gallipolis Care.

On August 18, 2017, Appellant voluntarily dismissed Defendant Fortis Management Group, LLC, pursuant to Ohio Rule 41(A)(1)(a).

In support of her argument that her father did not sign the agreement and she did not do so with legal authority, Appellant attached an affidavit to her merit brief. Appellees filed a motion to strike the affidavit as it was not part of the trial court's record. We agreed. Since the affidavit was not part of the trial court record, we do not consider it on appeal. See App.R. 9(A) and App.R. 12(A)(1)(b).

Appellant's brief throughout references the arbitration agreement as an "arbitration clause." The "Alternative Dispute Resolution Agreement-Ohio" consists of six pages including thirteen subparts and a signature page.