[Cite as *Scharf v. Manor Care of Willoughby, OH, L.L.C.*, 2020-Ohio-1322.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| JACALYN SCHARF, P.O.A. FOR LOUISE KOVACH, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | : | **CASE NO. 2019-L-062** |
| | : | |
| - vs - | : | |
| | : | |
| MANOR CARE OF WILLOUGHBY, OH, LLC, et al., | : | |
| | : | |
| Defendants-Appellants. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2019 CV 000382.

Judgment: Affirmed.

*Jeffrey A. Leikin*, Weisman Law Firm, 25201 Chagrin Boulevard, Suite 270, Beachwood, OH 44112; *Scott A. Rumizen*, Rumizen & Weisman Co., Ltd., 28601 Chagrin Boulevard, Suite 250, Eton Tower, Beachwood, OH 44122 (For Plaintiff-Appellee).

*Brian D. Sullivan* & *Holly Marie Wilson*, Reminger Co., LPA, 101 West Prospect Avenue, Suite 1400, Cleveland, OH 44115; *Thomas A. Prislipsky*, Reminger Co., LPA, 11 Federal Plaza Central, Suite 1200, Youngstown, OH 44503 (For Defendants-Appellants).

TIMOTHY P. CANNON, P.J.

{¶1} Appellants—Manor Care of Willoughby, OH, LLC; Heartland of Willoughby; HCR Manor Care Services, Inc.; HCR IV Healthcare, LLC; et al.—appeal from the June 14, 2019 entry of the Lake County Court of Common Pleas, which denied

appellants' motion to stay proceedings and compel arbitration. The judgment is affirmed.

{¶2} On March 8, 2019, a complaint was filed against defendants-appellants by plaintiff-appellee, Jacalyn Scharf ("Ms. Scharf"), P.O.A. for Louise Kovach ("Mrs. Kovach"). Ms. Scharf, as power of attorney for Mrs. Kovach, brought claims against appellants for nursing home neglect, negligence, civil assault, and wanton misconduct.

{¶3} According to the complaint, Mrs. Kovach, age 88, was admitted as a resident to Heartland of Willoughby nursing facility on March 5, 2018, with a diagnosis of dementia and other issues. It was alleged that Mrs. Kovach was seriously injured on March 10, 2018, when she was physically attacked and assaulted by another nursing home resident, whom appellants knew to be violent, aggressive, and a danger to residents.

{¶4} Appellants answered the complaint on April 3, 2019. As an affirmative defense, appellants alleged the trial court lacks jurisdiction over the matter because the parties have agreed to binding arbitration.

{¶5} On April 10, 2019, appellants filed a motion to stay proceedings and compel arbitration. Attached to the motion is a Voluntary Arbitration Agreement, signed by Ms. Scharf, as Mrs. Kovach's representative, and by a representative of Heartland of Willoughby, LLC. The Voluntary Arbitration Agreement was executed by both parties on March 12, 2018, two days after Mrs. Kovach was allegedly attacked and injured. The relevant portions of the Voluntary Arbitration Agreement read as follows:

> This is a Voluntary Arbitration Agreement ("Agreement") between:
> The "Center": Heartland of Willoughby, LLC doing business as Heartland of Willoughby;
> The "Patient": Louise Kovach; and

2

The "Patient's Representative" (if any): _____

1.  **Voluntary Agreement to Arbitrate Disputes**.  The parties agree that they will mutually benefit from the speedy and efficient resolution of any dispute or controversy which may arise between them.  This is a voluntary Agreement to have all disputes resolved through binding arbitration by an independent neutral Arbitrator who will be selected by the parties as specified in this Agreement.  **THE PARTIES AGREE THAT THEY ARE WAIVING THE RIGHT TO TRIAL BY JURY.  ANY DISPUTES BETWEEN THE PARTIES WILL BE RESOLVED EXCLUSIVELY THROUGH BINDING ARBITRATION**.

2.  **Parties**.  This Agreement and the definitions in this Section will be interpreted as broadly as possible so as to bind and benefit any person who asserts any claim or against whom a claim is asserted by or on behalf of the Center or the Patient.  The parties intend to allow any person alleged to be liable for any actions or inactions of the Center or the Patient or related to any care provided to the Patient to demand arbitration pursuant to this Agreement.

    a.     "Center" includes the Center's licensed operator, governing body, officers, directors, members, shareholders, administrator, employees, managers, agents, and any parent company, subsidiary, or affiliates, including but not limited to HCR ManorCare, Inc. and any of its affiliates, and any person or entity alleged to be responsible for the Center's activities.

    b.     "Patient" includes the Patient, the Patient's Representative, the Patient's guardian, attorney-in-fact, agent, sponsor, or any person whose claim is derived through or on behalf of the Patient, including any spouse, child, parent, executor, administrator, personal representative, heir, or survivor, as well as anyone entitled to bring a wrongful death claim relating to the Patient.  The Patient is an intended third-party beneficiary of this Agreement.

{¶6} Appellee responded in opposition, arguing four reasons the motion should be denied: (A) the Arbitration Agreement is unenforceable because it was executed after Mrs. Kovach received care and already sustained injuries; (B) the Arbitration Agreement violates R.C. 2711.23(C); (C) the Arbitration Agreement was not entered into between all of the defendants to this lawsuit and is therefore not enforceable; and

3

(D) defendants have waived any alleged right to arbitrate any claims in this case. Appellants addressed each argument in a reply brief.

{¶7} The trial court issued a judgment entry on June 14, 2019, denying the motion to stay proceedings and compel arbitration. Upon consideration, the trial court found "it is uncontroverted that Louise Kovach's representative Jacalyn Scharf signed the Arbitration Agreement on March 12, 2018, two days after Ms. Kovach was injured in the facility." Thus, the court held the following:

> Pursuant to R.C. 2711.22 and 2711.23, in order for any arbitration agreement between a patient and a healthcare provider to be enforceable it must be executed prior to the patient receiving care. Therefore, while the Arbitration Agreement may be enforceable as to injuries received after March 12, 2018, it is not enforceable as to the March 10, 2018, injury Ms. Kovach allegedly sustained at the facility.

The trial court did not address the other arguments that had been raised by appellee.

{¶8} From this entry, appellants assert one assignment of error:

{¶9} "The trial court committed reversible error when it failed to grant appellants' motion to stay proceedings and compel arbitration based on its opinion that R.C. 2711.22 and R.C. 2711.23 prevent nursing homes from entering into retroactive arbitration agreements after care has been rendered."

{¶10} Within their assignment of error, appellants submit five topics for review. The first four, however, were not addressed by the trial court in its decision, to wit: (1) both Ohio and federal courts favor arbitration as an alternative means of dispute resolution; (2) the arbitration agreement entered into by appellants and Scharf is a valid contract; (3) the arbitration agreement includes all appellants; and (4) appellants did not

4

waive their right to arbitrate when they filed an answer to Scharf's complaint. These need not be addressed to resolve this appeal, and we therefore decline to do so.

{¶11} The only argument raised in appellants' brief relevant to the trial court's decision, and determinative of the appeal, is whether the Voluntary Arbitration Agreement at issue needs to comply with R.C. 2711.22 and R.C. 2711.23 in order to be enforceable.

{¶12} We accord due deference to the trial court's factual finding that the Voluntary Arbitration Agreement was signed two days after Mrs. Kovach was injured in the nursing facility. *See Jamison v. LDA Builders, Inc.*, 11th Dist. Portage No. 2011-P-0072, 2013-Ohio-2037, ¶21, citing *Taylor Building Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶2. As to the trial court's legal analysis based upon that factual finding, we review the decision de novo. Moreover, the interpretation of contractual and statutory provisions is subject to de novo review. *See Alford v. Arbors at Gallipolis*, 4th Dist. Gallia No. 17CA11, 2018-Ohio-4653, ¶9 (citations omitted) (a trial court's decision whether to issue a stay pending arbitration is subject to de novo review on issues of law, which commonly predominate because these cases generally involve issues of contract interpretation).

{¶13} R.C. 2711.22 and R.C. 2711.23 read as follows, in pertinent part:

> Except as otherwise provided in this section, a written contract between a patient and a hospital or healthcare provider to settle by binding arbitration any dispute or controversy arising out of the diagnosis, treatment, or care of the patient rendered by a hospital or healthcare provider, that is **entered into prior to** the diagnosis, treatment, or care of the patient is valid, irrevocable, and enforceable once the contract is signed by all parties. The contract remains valid, irrevocable, and enforceable until or unless the patient or the patient's legal representative rescinds the contract by written notice within thirty days of the signing of the contract. A

5

guardian or other legal representative of the patient may give written notice of the rescission of the contract if the patient is incapacitated or a minor.

R.C. 2711.22(A) (emphasis added).

> To be valid and enforceable any arbitration agreements pursuant to sections 2711.01 and 2711.22 of the Revised Code for controversies involving a medical, dental, chiropractic, or optometric claim that is ***entered into prior to*** a patient receiving any care, diagnosis, or treatment shall include or be subject to the following conditions: [(A)-(J)].

R.C. 2711.23 (emphasis added).

{¶14} According to the plain text of these statutes, a dispute or controversy may be settled by binding arbitration only if the written contract is entered into prior to the diagnosis, treatment, or care that gives rise to the dispute or controversy. Thus, these provisions cannot apply to appellee's complaint, because the Voluntary Arbitration Agreement was not entered into prior to Mrs. Kovach receiving the care that gave rise to the controversy.

{¶15} Appellants first contend the trial court mistakenly applied these statutes when it held that, "pursuant to R.C. 2711.22 and 2711.23, in order for any arbitration agreement between a patient and a healthcare provider to be enforceable it must be executed prior to the patient receiving care." Appellants read this sentence, in isolation, as a complete bar to the validity and enforceability of the Voluntary Arbitration Agreement. This is not a correct reading of the trial court's analysis, however, when read in conjunction with the entry's next sentence: "Therefore, while the Arbitration Agreement may be enforceable as to injuries received after March 12, 2018, it is not enforceable as to the March 10, 2018 injury Ms. Kovach allegedly sustained at the facility."

6

{¶16} The trial court correctly applied R.C. 2711.22 and R.C. 2711.23, in that the Voluntary Arbitration Agreement is unenforceable under those provisions as to the March 10, 2018 injury, but it may be enforceable as to any disputes or controversies arising after March 12, 2018, the date the agreement was entered into by the parties.

{¶17} Appellants' first issue is not well taken.

{¶18} Appellants next contend the trial court erred in holding that the Voluntary Arbitration Agreement is not enforceable as to the March 10, 2018 injury Mrs. Kovach allegedly sustained at the facility. They rely on R.C. 2711.01, which governs arbitration agreements generally. R.C. 2711.01(A) provides for two distinct types of arbitration agreements:

> [1] A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or
>
> [2] **_any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit,_** or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create,
>
> shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract. [Emphasis added.]

{¶19} Appellants interpret this provision to mean that *any* agreement to arbitrate an existing controversy between parties is valid. Thus, they argue the trial court's decision was in error even under this more general statute.

{¶20} Appellee responds that the trial court's decision was proper because it found that the dispute between the parties fell outside the scope of the arbitration agreement. Appellee argues the March 12, 2018 Voluntary Arbitration Agreement is

7

unenforceable as to Mrs. Kovach's March 10, 2018 injury because it was executed after the fact, and the parties did not agree to submit to arbitration any controversy already existing between them at the time of execution.

{¶21} When faced with a motion to stay proceedings and compel arbitration, trial courts are governed by R.C. 2711.02(B):

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

{¶22} "As the wording of * * * R.C. 2711.02(B) strongly suggests, two basic facts must be proven before a stay of the trial proceeding can be justified: (1) the existence of a valid written agreement to arbitrate disputes between the parties; and (2) the scope of the agreement is sufficiently broad to cover the specific issue which is the subject of the pending case." *Dodeka, L.L.C. v. Keith*, 11th Dist. Portage No. 2011-P-0043, 2012-Ohio-6216, ¶25 (citation omitted). "Both factual requirements are predicated upon the legal proposition that, while the arbitration of disputes is strongly encouraged under the law, a party should not be forced to proceed to arbitration unless she expressly agreed to do so." *Id.* (citations omitted). "Furthermore, in determining whether an enforceable agreement to arbitrate exists, state-law contract principles must be applied." *Id.* (citation omitted).

{¶23} R.C. 2711.01 "acknowledges that an arbitration clause is, in effect, a contract within a contract, subject to revocation on its own merits." *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 501 (1998); *Taylor Bldg., supra*, at ¶41. "'A contract is

generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Westerfield v. Three Rivers Nursing & Rehab. Ctr., LLC*, 2d Dist. Montgomery No. 25347, 2013-Ohio-512, ¶20, quoting *Minster Farmers Coop. Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259, ¶28. "The parties must have a 'meeting of the minds' as to the essential terms of the contract in order to enforce the contract." *Id.*, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991).

**{¶24}** "When reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties." *Id.* at ¶21, citing *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). "A contract that is, by its terms, clear and unambiguous requires no real interpretation or construction and will be given the effect called for by the plain language of the contract." *Id.*, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55 (1989).

**{¶25}** Again, the Voluntary Arbitration Agreement states, in pertinent part: "The parties agree that they will mutually benefit from the speedy and efficient resolution of any dispute or controversy which ***may arise*** between them." (Emphasis added.)

**{¶26}** We find no ambiguity in the language of this provision that requires interpretation or construction. The effect called for by the plain language is that the Voluntary Arbitration Agreement, executed on March 12, 2018, was to have prospective application, governing future disputes or controversy, if any. There is no reference to the alleged injury that occurred in the facility on March 10, 2018, and there is no

9

express statement that the parties agree to submit to arbitration any controversy that already existed between them at the time of the agreement. Appellee, in agreeing to arbitration, gave up her right to a jury trial. There is no stated or known consideration that would bind the arbitration provision to an already-existing claim. Nor is there any evidence of a "meeting of the minds" in this regard.

{¶27} Accordingly, the trial court did not err in holding that the March 12, 2018 Voluntary Arbitration Agreement is not enforceable as to the March 10, 2018 injury that is the subject of appellee's complaint. *See, e.g.*, *Hussein v. Hafner & Shugarman Ents., Inc.*, 176 Ohio App.3d 127, 2008-Ohio-1791, ¶31 (6th Dist.) (where the appellees' fraud claims alleged acts that occurred prior to the execution of the contract, the trial court did not err when it declined to order arbitration on those claims).

{¶28} Appellants' second issue is not well taken.

{¶29} Appellants' sole assignment of error is without merit.

{¶30} The judgment of the Lake County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.

10